## No. 14,297.

### VAN GILDER v. CITY AND COUNTY OF DENVER.

(89 P. [2d] 529)

Decided March 13, 1939.   Rehearing denied April 17, 1939.

Messrs. HECOX & DEAHL, Messrs. WINTERS and NAGEL, for plaintiff in error.

Mr. MALCOLM LINDSEY, Mr. ROBERT J. KIRSCHWING, for defendant in error.

*En Banc.*

MR. JUSTICE BURKE delivered the opinion of the court.

THESE parties appear here in the same order as in the trial court. They are hereinafter referred to as plaintiff and the city, respectively.

This action was by a surety to recover the amount paid on a forfeited criminal recognizance. In October, 1922, an information was filed in the Denver district court charging certain persons, including Roy Coyne, with criminal conspiracy. As per order Coyne gave his personal recognizance in the sum of $2,000. He absconded, was retaken, and his bond raised to $10,000, conditioned on his appearance September 17, 1923, and "from day to day and term to term thereafter," etc. Plaintiff signed that bond as surety. November 30, following, while a jury was being selected for his trial, Coyne disappeared. The bond was forfeited, scire facias issued, and judgment in the sum of $10,000 was thereafter entered against plaintiff as such surety. Error thereto was prosecuted and that judgment affirmed here May 5, 1924. *Van Gilder v. People,* 75 Colo. 515, 227 Pac. 386. Plaintiff thereupon paid the judgment in full and the costs assessed against him, and the money, in due course, passed into the general fund of the city. In 1935 Coyne was apprehended in New Mexico, returned on extradition to Denver, and June 17 of that year was surrendered by plaintiff to the sheriff in open court. Thirty days later, on motion of the dis-

trict attorney and order of court, Coyne was surrendered on extradition to the agent of the governor of Illinois, was thereafter tried in that state, convicted and committed to the Illinois penitentiary. October following the Coyne case was stricken from the trial calendar. In July, 1936, it was reinstated and pluries capias issued and sent to the warden of the Illinois penitentiary with a request to hold Coyne thereunder on his release from that institution.

The complaint herein was filed September 11, 1937. It is divided into six causes. In each the plaintiff, by reason of the facts recited, demands of the city a return of his $10,000 with interest. In one of these it is alleged that the payment was a trust fund. In another estoppel is pleaded against the city. In yet another it is alleged that if not entitled to repayment as a matter of right plaintiff is so entitled in the exercise of the court's discretion, and particularly so because the city has had the profitable enjoyment of the amount since its payment. Variations in the other causes need not here be noted. The city demurred generally for want of facts and that demurrer was sustained. Plaintiff elected to stand and judgment for costs was entered against him. To review that judgment he prosecutes this writ. Of the eleven assignments the first goes generally to the ruling on the demurrer. The others are but repetitions thereof as applied to the several defenses.

Section 444, chapter 48, volume 2, '35 C. S. A. provides: "In all cases of bail for the appearance of any person or persons charged with any criminal offense, the security or securities of such person or persons may, at any time before judgment is rendered, upon scire facias to show cause why execution should not issue against such security or securities, seize and surrender such person or persons charged as aforesaid, to the sheriff of the county wherein the recognizance shall be taken, and it shall be the duty of such sheriff, on such surrender and delivery to him of a certified copy of the recognizance by

which such security or securities are bound, to take such person or persons so charged as aforesaid into custody, and by writing acknowledge such surrender, and thereupon the security or securities shall be discharged from any such recognizance, upon payment of all costs occasioned thereby." More than thirty years ago our Court of Appeals held this act the measure of a surety's right of recovery. "The right of sureties to obtain their discharge and exoneration from a forfeited recognizance is statutory." *Huston v. People,* 12 Colo. App. 271, 55 Pac. 263.

We have apparently declared such a judgment final. "The people might have had a forfeiture declared, and a scire facias issued to and served upon the sureties, and if no action on the part of the people had intervened, and the sureties failed to produce the principal, a judgment, *absolute against them,* could have been entered." *People v. Loomis,* 60 Colo. 202, 152 Pac. 143. Again this court seems to have recognized the statute as defining the limits of the surety's right of recovery, extending it to "the *final determination* of the rights of the parties in the action," and releasing a surety who surrendered his principal after the court had made its findings and ordered judgment, but before the disposition of a motion for a new trial. *Scott v. People,* 64 Colo. 396, 172 Pac. 9. It seems the same reasoning would carry the limit of the surety's right to the final disposition of the cause in this court, if it came here on error. If that be true plaintiff in the instant case had approximately eighteen months within which his surrender of his principal would have relieved him of liability.

In many of the cases cited stress is laid upon the good faith of the surety as distinguished from that of his principal and the necessity emphasized for the surrender within a reasonable time. We have reiterated the latter, but repudiated the former. "Southard's good faith, however, and therefore that of his surety, which rests on his, is shattered by his continued failure to present

himself * * *. To show equity, the application for relief should be prompt, while the evidence is fresh, and the accused should be produced with it, * * *." *Southard v. People,* 74 Colo. 67, 219 Pac. 218. Considering the "equities" in the instant case, as many of the authorities do, too much emphasis can not be laid upon the phrase in the foregoing quotation, "The application for relief should be prompt, while the evidence is fresh." Ordinarily the surrender of a defendant long after the return date fixed in his bond is a mere futile gesture. Witnesses are then generally dead or departed, records are lost, prosecutors have passed out of the picture, and the accused consequently is in so little danger as to incur no substantial risk. Release of a surety under such circumstances amounts to a mere fraud upon the state. No case has been called to our attention where recovery in any sum was permitted on any theory after the lapse of a period commensurate with that here disclosed. To bring this case within the rule of any authority cited it should at least be made to appear that the people have not been seriously handicapped by the default. The only attempt here made by plaintiff to meet this requirement is in that portion of the complaint which reads, after reciting certain facts of record and certain acts of the officials, "All these actions of the 'people' were based on the representation and on the existence of the fact that the 'people' plaintiff * * * had sufficient evidence upon which to convict said Roy Coyne." This falls far short of definite allegations of fact disclosing that the people had not been handicapped by the default.

A careful examination of plaintiff's authorities reduces his claimed "right" of recovery to nothing more than a right to the exercise of the court's discretion based upon the equities of the case. It is doubtful if, in any view of the case, estoppel can be here invoked. The general rule seems to be that the state can only be estopped by the conduct of its officers "in respect of acts done in its so-called proprietary or private capacity,

as distinguished from its so-called governmental or public capacity in the strict scope of which it cannot be estopped.'' 21 C. J., p. 1186, §190. Here the state was clearly acting in the latter capacity. Again, if the judgment against a surety never becomes final, but may be reopened and modified or vacated at *any time* in the discretion of the court, the penalty paid must always remain subject to the surety's demand, and the distinction between such fund and a technical trust fund is too nebulous to require examination.

We have yet to consider the only proposition urged by plaintiff which has both reason and authority to support it, i. e., that under the common law the surrender of the defaulting defendant entitled the surety to demand the return of the penalty and a hearing on that demand on which the court, considering all the equities of the case, could render such judgment as these justified; that our statute modified that law only to the extent of establishing the surety's right of recovery as absolute when the surrender preceded the entry of judgment on scire facias; and hence that statute simply enlarged the right of the surety and restricted the right of the state. In support of this proposition numerous authorities are cited, the most important being certain federal, and four Washington, cases. That such was the common law, followed, in the absence of statute, by the U. S. courts, would appear from the opinion of Chief Justice Marshall, on circuit, in *United States v. Feely,* 1 Brock. 255, 25 Fed. Cas. 1055, No. 15082, decided in May, 1813. It would seem however, that the question was still considered a doubtful one in 1839, for at that time the Congress passed an act which, in substance, has remained unamended to date. U. S. C. A., title 18, §601. It will be observed that this act puts in statutory form the law declared in the Feely case. Since all federal cases from that date were decided under that statute, and since we have no such act in Colorado, we get little help from them. Perhaps the most interesting and enlightening of these is *United*

*States v. Duncan,* 2 Pittsb. Rep. 328, 25 Fed. Cas. 937, No. 15004. There, however, the "willful default" mentioned in the federal statute is held to refer to the surety, regardless of the conduct of his principal. This is exactly contrary to our statement in the Southard case, supra.

The most interesting of the Washington cases, particularly because therein the three preceding are discussed, is *State v. Jimas,* 166 Wash. 356, 7 P. (2d) 15, 84 A. L. R. 416. In that case the bond had been forfeited and the penalty paid. Recovery was denied and the judgment affirmed. It appears that the surety had been otherwise reimbursed, at least in part. The appellate tribunal adheres to the rule of equity and discretion, but holds that no abuse thereof was shown.

A careful examination of all these authorities convinces us that the intent of our Legislature, as expressed in said section 444, as interpreted by our Court of Appeals in the Huston case, supra, and as tacitly approved by the decisions of this court hereinbefore cited, is that in Colorado the right of the surety to discharge is statutory and terminates with final judgment on scire facias. We are not called upon to say, and do not say, that this rule extends to all cases of unintentional default of the defendant, as, for instance, where that default is due to illness, or his involuntary retention by other authorities. In the language of Chief Justice Marshall in the Feely case, supra, "Should the legislature think otherwise, the case may be provided for by statute."

The judgment is affirmed.

Mr. Chief Justice Hilliard and Mr. Justice Bakke concur.