No. 17,572.

J. R. Allison, et al., Intervenors v. People of the State of Colorado in re James Adamson.
(286 P. [2d] 1102)

Decided July 25, 1955.

Messrs. Moynihan, Hughes & Bjelland, Mr. Charles J. Moynihan, Mr. Victor F. Crepeau, for plaintiffs in error.

Mr. Duke W. Dunbar, Attorney General, Mr. Frank A. Wachob, Deputy Attorney General, Mr. Norman H.

Comstock, Assistant Attorney General, for defendant in error.

*En Banc.*

Mr. Justice Moore delivered the opinion of the Court.

September 5, 1953, an information was filed in the district court of Mesa county in which one James Adamson was accused of the crime of burglary. He was admitted to bail in the sum of $3,000.00 and was released from custody, on surety bond of the United States Fidelity & Guaranty Company. The cause was set for trial on the 23rd day of February, 1954, and was continued upon motion until the 5th day of March. March 30, 1954, the district attorney moved the court for forfeiture of the recognizance for failure of defendant to appear. Defendant Adamson and his bondsman, on April 1, 1954, moved the court to continue the cause until such time as it would be possible for him to make an appearance, to discharge the bond without forfeiture, and to release the surety thereon. After hearing argument on this motion the trial court entered an order giving Adamson and his bondsman ninety days in which to show cause why judgment and execution should not issue to enforce collection of said bond. Within the time allowed by the court, J. R. Allison, Ilene Allison and Henry Brewer, plaintiffs in error herein, moved for permission to intervene and as intervenors moved for a continuance of the case, or, in the alternative, to discharge the recognizance bond without forfeiture and release the surety thereon.

Defendant and the surety company filed their answer to the order to show cause, and, upon the issues framed thereby, the trial court entered judgment in favor of the people of the State of Colorado and against Adamson and his surety, in the sum of $3,000.00.

The basis upon which the intervenors entered the case is, that in order to secure the entry of the United States

Fidelity & Guaranty Co. as surety, said intervenors were required to enter into an indemnifying agreement with said company, and in connection therewith they executed and delivered to said company certain deeds of trust on their homes located in Torrance, California. Ilene Allison is a sister of the accused James Adamson, and because of such relationship and the love and affection for her brother she persuaded her husband J. R. Allison, and Henry Brewer, a neighbor and friend, to enter into such indemnifying agreement. The deeds of trust executed by the intervenors upon their homes were second deeds of trust in each instance. J. R. Allison and Brewer are ex-servicemen with families dependent upon them, and the bulk of the property which they have been able to accumulate is represented in the homes which are occupied by their families. Neither Brewer nor the Allisons are able to indemnify the surety company from assets other than those represented by the equities in their respective homes.

Following the release of said James Adamson, and prior to the date when he was to appear for trial, he was arrested in the city of Los Angeles, California, on a charge of burglary. Upon disposition of that action in the State of California he was sentenced to prison for a minimum term of five years. The United States Fidelity & Guaranty Co. and plaintiffs in error offered to pay all the costs incurred by the people of the State of Colorado in returning him to the jurisdiction of the Colorado court upon his release from the California prison, and plaintiffs in error moved the trial court to direct the Mesa county district attorney to place a hold order on him and to extradite him on his release from the California prison.

The trial court at the time of the entry of the judgment made the following statement, which indicates the basis for the judgment:

"As the Court has already stated to counsel, the matters that were argued in connection with the motion of

the intervenors were before the Court sometime back when the district attorney's office moved to forfeit the bond, and at which time, after considering the law, this Court arrived at the conclusion that the terms of the bond called for the defendant's appearance at a certain time, and that it was no excuse that he was under indictment or had been convicted of an offense in the State of California and was then incarcerated and could not appear. The Court recognized then and now recognizes that there are two lines of authority, one holding that in the discretion of the Court the time for appearance under the bond may be continued until a defendant, such as in this case, has been released; the other that the bond is forfeited by non-appearance, even though it is not possible for the defendant to appear because of the fact that he is incarcerated in the State of California. Under that rule, matters of hardship, which may be the occasion to the indemnitors on the surety bond would be, as the district attorney's office now states, immaterial. On the other hand, if you follow the rule that the discretion is in the Court to do as he sees fit about forfeiting his bond, I assume that matters which would appeal to the sympathy of the ordinary individual, even if not to a judge, should be put in evidence, so the Court for the purpose of the record will admit the exhibits.

"At this time the motion for a further continuance is denied on the basis that it is the Court's understanding of the law that it is no excuse, and it gives no rights to the surety on her bond as against the application to forfeit the bond, that the defendant in the present case, the principal on the bond, is held against his will for the commission of a felony in the State of California, which fact makes it impossible for him to answer to his bond in the State of Colorado."

Intervenors, seeking reversal of the judgment, bring the case to this Court for review by writ of error.

Questions to be Determined.

First: *Where a defendant in a criminal case is*

*admitted to bail; while at liberty pending trial he is convicted of a felony committed in another state and is confined in prison in that state when his first case comes on for trial; and because of said imprisonment he cannot appear, pursuant to the condition of the bail bond; shall the surety on said bond be relieved from a forfeiture thereof upon an offer to defray all costs and expenses involved in returning the accused upon completion of the imprisonment which prevented his attendance in the Colorado court?*

This question is answered in the affirmative. In *People v. Pollock,* 65 Colo. 275, 176 Pac. 329, this Court quoted from the opinion in *United States v. Lee,* (D.C.) 170 Fed. 613, as follows:

"The purpose of a recognizance is not to enrich the treasury, but to serve the convenience of the party accused but not convicted, without interfering with or defeating the administration of justice * * *."

In *Smith v. People,* 67 Colo. 452, 184 Pac. 372, the opinion of the court contains, inter alia, the following:

"The enriching of the public treasury is no part of the object at which the proceeding is aimed.

"There is no reason for penalizing the sureties when it appears that they are unable, by no fault of their own or of their principal, to perform the condition of the bond. Moreover, to produce for trial an insane person would serve no good purpose as the trial could not proceed.

"These considerations have been many times recognized by the courts, which have set aside forfeitures and vacated judgments on bail-bonds when the principal has been prevented by death, sickness or insanity from appearing as required by the bond. Such cases come within the rule which relieves from the obligation of a contract rendered impossible of performance by an act of God."

In *Chase v. People,* 2 Colo. 481, it was held that when a principal in a recognizance bond was prevented by sickness from appearing, a judgment of forfeiture should

be set aside when the facts were made to appear. In *Western Surety Co. v. People,* 120 Colo. 357, 208 P. (2d) 1164, it was held that the death of the principal in a bail bond, before the entry of judgment against the surety, operated to relieve the surety from the penalty of the bond. The opinion in that case contained, inter alia, the following:

"It would seem to be a fickle and illogical system of jurisprudence to exonerate the surety for the nonappearance of its principal by reason of confinement due to either mental or physical illness and not to exonerate it when death—the final terminus of all mental and physical ills—had overtaken the principal. We know of no jurisdiction where such has been the ruling."

Generally, the decisions from other jurisdictions hold that sickness, insanity or death of the principal will relieve the surety from forfeiture of a bail bond. The majority rule seems to be that a trial court has no jurisdiction to relieve the surety from liability except on grounds generally recognized by the law as excusing the performance of the undertaking, and that such grounds exist only when the appearance of accused is made impossible by an act of God, an act of the State which is the beneficiary of the bond, or an act of law. Typical of this line of authority is the case of *State v. Pelley,* 222 N.C. 684, 24 S.E. (2d) 635, from which we quote the following:

"The appellant herein, Carrie Thrash Dorsett, is not entitled to the relief she seeks unless she can show that the performance of her undertaking has been rendered impossible or excusable (a) by an act of God; (b) by an act of the obligee; or (c) by an act of law. Where the principal in a bail bond dies before the day of performance or is prevented by illness from appearing, the case is within the first category. Where the principal in a bail bond is in prison within the State, pursuant to a judgment of a Court of competent jurisdiction of the State, the case comes within the second category. State v. Eller, 218 N.C. 365, 11 S.E. 2d 295; 6 Am. Jur. Sec.

139, p. 102. Where the party has been turned over to the Federal Court within the State by a prior bondsman and is serving a sentence by that Court, or if the party has been arrested in the State where the obligation is given and sent out of the State by the Governor upon requisition from another State or other foreign jurisdiction, the case falls within the third category. State v. Welborn, 205 N.C. 601, 172 S.E. 174; United States v. Marrin, D.C., 170 F. 476; 6 Am. Jur., Sec. 140, p. 103; 8 C.J.S., Bail, § 77, p. 148."

A more liberal doctrine is announced by the Supreme Court of Washington in the case of *State v. Reed,* 127 Wash. 166, 219 Pac. 833. In that case the facts were identical with those present in the case at bar. The trial court granted the surety's plea to abate the action and entered an order to the effect that, upon payment into the court of costs, any further proceedings in the case would be stayed until the release of Reed from the penitentiary in the State of California. The Supreme Court of Washington upheld the action of the trial court and quoted from the opinion in *State v. Johnson,* 69 Wash. 612, 126 Pac. 56, as follows:

"It is the manifest policy of the statute to encourage the giving of bail in proper cases, rather than to hold in custody at the state's expense persons accused of bailable offenses. The court should so administer cases arising under this statute as to give effect to this manifest policy."

The policy announced in the Johnson case, supra, was adhered to in the case of *State v. Jackschitz,* 76 Wash. 253, 136 Pac. 132, wherein the Supreme Court of Washington stated that the giving of bail:

"Should be encouraged for various reasons: That the state may be relieved of the burden of keeping an accused person; that the innocent shall not be confined pending a trial and formal acquittal; that, in cases of flight, a recapture may be aided by the bondsmen who, it is presumed will be moved by an incentive to prevent

judgment, or, if it has been entered, to absolve it and to mitigate its penalties. To accomplish these things and others, courts have been liberal in vacating judgments entered on bail bonds, exercising always a broad discretion and in proper cases preserving the equities of the public by deducting such costs and expenses as may have been incurred by the state. To hold otherwise would discourage the giving of bail and defeat the manifest purpose of the statute."

The record before us contains no suggestion or intimation that the surety company or the intervenors are in any way chargeable with complicity in the act of Adamson which resulted in his imprisonment in California. It appears that they have been diligent in their efforts to see to it that he ultimately is brought before the bar of justice in Colorado. They have offered to defray all costs and expenses in returning him to Colorado upon completion of his sentence. Admittedly it is a physical impossibility for them to take possession of his person and present him for trial as long as he is confined in prison. They are just as helpless, under the circumstances that exist in the instant case, as they would be if Adamson were dead or confined to bed by illness.

Adopting the words employed by this Court in *Western Surety Co. v. People, supra,* it seems to us to be "a fickle and illogical system of jurisprudence to exonerate the surety for the nonappearance of its principal by reason of confinement due to either mental or physical illness," and to refuse to exonerate the surety for the nonappearance of its principal when he actually is confined behind prison walls. Since the purpose of the bail bond is not to enrich the treasury, and since without question the State of Colorado can cause the accused to be held, upon completion of his sentence, for return to Colorado, it is clear that the ends of justice do not require that the surety company and the guarantors thereof should suffer a forfeiture. The enforcement of any other rule under the facts of the case would be unrealistic, harsh and un-

reasonable, and, notwithstanding ample authority from other jurisdictions to the contrary, this Court holds that the position of the surety before the trial court and the intervenors in this court, is well-founded and should have been sustained.

**Second:** *Can the guarantors of the surety company, who were permitted to intervene in the proceedings instituted to forfeit the bond, seek review of the judgment entered by the trial court against the surety company?*

This question is answered in the affirmative. The Attorney General, who seeks forfeiure of the bond on behalf of the People, argues in his brief that intervenors have no standing before this Court because they were not parties to the recognizance; that no judgment was entered against them; and that they assumed no obligation "to have the accused before the trial court."

It is clear that this argument is unrealistic. The guarantors are the only persons who actually would suffer loss by enforcement of the judgment. They were permitted to intervene in the action. Thus they became parties to the record. The surety company did not see fit to seek review of the judgment by writ of error; thus the defense made against forfeiture was abandoned by the surety and was "inadequate" in so far as the definite interest of intervenors was concerned. Rule 24, R.C.P. Colo., provides, that intervention shall be granted, "* * * (2) when the representation of the applicants' interest by existing parties is or may be inadequate and the applicant is or may be bound by a judgment in the action; * * *." Under the contract by which intervenors agreed to indemnify the surety company against loss, they unquestionably would be bound by the judgment.

The judgment is reversed and the cause remanded with directions ot set aside the forfeiture of the bond; to abate the criminal action until a time following the completion of the sentence being served by Adamson in California; and for the entry of orders sufficient to protect

the People of the State of Colorado in the matter of costs and expenses which may be necessary to secure his return to Colorado to stand trial upon the pending accusation.

MR. CHIEF JUSTICE ALTER and Mr. JUSTICE CLARK dissent.