No. 20688.

THE PEOPLE OF THE STATE OF COLORADO *v.*
ROMAN JOHNSON, ET AL.
(395 P.2d 19)

Decided August 31, 1964.

Mr. DUKE W. DUNBAR, Attorney General, Mr. JOHN E. BUSH, Assistant, Mr. BERT M. KEATING, District Attorney, Mr. GREGORY A. MUELLER, Assistant, Mr. WILLIAM J. CHISHOLM, Deputy, for plaintiff in error.

Mr. RICHARD D. GREENE, Mrs. PATRICIA W. WOTKYNS, for defendant in error Ray Galindo.

*En Banc.*

MR. JUSTICE HALL delivered the opinion of the Court.

The People of the State of Colorado are here seeking to have reviewed proceedings had in the trial court in furtherance of the forfeiture of an appearance bond.

From the record before us it would seem that on November 11, 1961, an information was filed in the District Court of the City and County of Denver, Criminal

Action No. 49018, wherein the designated defendant in error, Stafford, and one Roman Johnson were charged with the crime of robbery. (Johnson, here designated as a defendant in error, is in no manner connected with the bond forfeiture proceedings and should not have been designated.)

On November 22, 1961, Stafford, as principal and the defendant in error Stuyvesant Insurance Company (herein referred to as Stuyvesant), executed and tendered to the clerk of the court a bond or recognizance in the "Penal sum of * * * $2500.00 * * *" conditioned that Stafford "* * * personally be and appear at the * * * Court * * *, on the 24th day of NOVEMBER, A. D. 1961, at 9:00 A. M. and from day to day * * *, and not depart the Court without leave, * * * until the final disposition of the case, * * *."

This bond or recognizance was filed with and approved by the clerk of the court.

*Presumably* Stafford did not appear on November 24, 1961. No one sought to offer any reason or excuse for his absence. There is nothing in the record to indicate that, at that time, the district attorney or the court made note of or did anything with reference to Criminal Action No. 49018 or with reference to the nonappearance or bond of Stafford.

On May 24, 1962, six months after the date fixed for Stafford's appearance, the district attorney *apparently* suggested to the court that steps should then be taken to forfeit Stafford's bond. From the record it appears that on May 24, 1962, proceedings were had whereby:

"* * * EVORN STAFFORD, being now three times solemnly called in open Court comes not, but herein wholly makes default. And the *said Ray Galindo*, Power of Attorney for Stuyvesant Insurance Company, Surety, being now three times solemnly called in open Court to produce the body of * * * EVORN STAFFORD, principal, and save his recognizance, comes not, but herein wholly makes default.

"Whereupon IT IS ORDERED * * * that the said *.* * STAFFORD, hath broken the conditions of his said recognizance and that the same be taken as forfeited." (Emphasis supplied.)

At that time and as a part of the order of forfeiture, the court directed "* * * that an Alias Capias Issue for EVORN STAFFORD * * *, returnable forthwith. And this is accordingly done."

From the record it appears that on February 7, 1963, the trial court, Hon. William H. Luby, District Judge of the Fifth Judicial District, presiding, entered its two-pronged order *"At this day, by agreement of Counsel"* (Emphasis supplied.) (Who are counsel or whom they represent is not disclosed):

(a) "IT IS ORDERED * * * that the hearing set this date be * * * vacated * * * as * * * STAFFORD, is in County Jail awaiting trial."

(b) "* * * IT IS FURTHER ORDERED * * * that *the Bondsman, GALINDO BONDING COMPANY* * * * is, ordered to pay the sum of * * * ($1,097.10) into the Registry of the Court." (Emphasis supplied.)

From the record it next appears that on February 13, 1963, the trial court, Hon. Edward J. Keating presiding, conducted a hearing at which William Chisholm, deputy district attorney, appeared for the People, and Richard D. Greene appeared as counsel for Galindo Bonding Agency. Testimony was taken, arguments presented and, at the close thereof, the trial judge made certain oral observations, following which on February 13, 1963, the trial court entered an order as follows:

"At this day comes Bert M. Keating, * * * and Ray Galindo, for the Galindo Bonding Company, by his Attorney, Richard D. Greene, also comes.

"Whereupon, this cause comes on for hearing on Sheriff's Costs.

"Whereupon, evidence is taken, and the Court being now sufficiently advised in the premises

"IT IS ORDERED * * * that the Galindo Bonding

Company * * * pay * * * [$731.78] into the Registry of the Court instead of * * * [$1097.10], as heretofore ordered. [By Hon. William H. Luby on February 7, 1962, "by agreement of Counsel"].

"IT IS FURTHER ORDERED * * * that * * * filing a motion for a re-hearing is hereby dismissed [dispensed?] with * * *.

"IT IS ORDERED * * * that the Statutory time for Appeal in this cause is hereby granted."

On February 18, 1963, the trial court entered an ex parte order directing that the bond be released.

The People are here by writ of error and urge two grounds for reversal and remand:

"A. Trial court erred in not requiring the bondsman, Galindo, to enter a petition to become a party to the criminal proceedings.

"B. Trial court erred in not requiring the bondsman, Galindo, to pay the Sheriffs' salaries in returning the Defendant Stafford to Denver, Colorado."

The record before us discloses that for a period of one year, two months and twenty-four days the trial court, functioning through at least five judges, two of whom were called in from great distances and at great expense to the People, entered thirteen orders. The last of said orders is here presented for review. Not one of said orders is proper or legal.

Stafford, a defendant being prosecuted by the People, was under orders to be in court on November 24, 1961, at 9:00 A. M.

C.R.S. '53, 45-1-3, provides:

"It shall be the exclusive duty of the district attorney to collect forfeited recognizances and turn the money so collected into the county treasury."

The district attorney should have, at the appointed time, been present in court representing the People in the prosecution of Stafford and, in the event of Stafford's failure to appear, to be in readiness to perform his statutory duties in connection with the forfeiture of

Stafford's bond, thus protecting the interests of the People. Proper time for forfeiture of the bond of a nonappearing defendant (no reason or justification for his nonappearance being presented) is on the day and hour specified in the bond for appearance.

■ To delay forfeiture proceedings for six months, or for any period of time (except for good reason shown), is unwarranted and jeopardizes the rights of the People, and may well leave with defendants and sureties the impression that bonds are of minor importance and be ignored with slight danger of any appreciable adverse effect on them.

It is difficult to understand how in these proceedings, neither the court nor the district attorney ever sought to acquire any jurisdiction over, or paid any attention to, Stafford or Stuyvesant, but showered all of their attention on "Bondsman Ray Galindo, Power of Attorney for Stuyvesant Insurance Company," "Bondsman, Ray Galindo," "Bondsman Galindo Bonding Company," "Galindo Bonding Agency."

■ Ray Galindo, no matter how he is described or characterized, is not a bondsman in this case; he is not a party to this litigation; he is not accountable for Stafford's appearance or nonappearance. Not being obligated, he is not in default; he owes no money, and no valid judgment could be entered against him.

■ After an order has been entered declaring a bond forfeited, such an order being in the nature of a declaration of default or an interlocutory decree, steps should be promptly taken to reduce the claim in debt arising out of breach of the condition of the bond to a judgment in behalf of the People and against the persons answerable for the amount of the "penal sum" specified in the bond.

■■ In order to have a valid adjudication of the rights and duties of the People, the principal and the sureties on the bond, due process is necessary. Following proper forfeiture the district attorney should prompt-

ly file with the court a complaint or petition setting forth facts showing the People's right to recover on the bond. Thereupon the court should issue a citation or other process in the nature of scire facias, as provided in C.R.S. '53, 39-2-18, directing those against whom judgment is sought to appear and answer on or before a specified day, the day fixed being such as to afford those against whom judgment is sought reasonable time after service to answer. The issues should be promptly made up and trial thereof had expeditiously and without unwarranted delay. To grant delay in order that sureties have time to search for, produce, and surrender the defendant would be without warrant.

On trial of the matter, the defendant not having appeared or been delivered by his surety, no good reason for his nonappearance having been shown, judgment should be entered for the penal sum specified in the bond.

If after forfeiture, but prior to trial and judgment, the defendant is surrendered by his bondsman to the sheriff, then proceedings should be had, as provided by C.R.S. '53, 39-2-18, which statute, rather than the bond, fixes the amount of recovery that may be had against the sureties. Judgment should be entered for "all costs occasioned" by the defendant's failure to appear at the appointed time. Such costs would include those incurred by the People in seeking to locate and produce the defendant in court, jury fees, witness fees incurred in preparing for a trial which has not taken place by reason of the defendant's nonappearance, and any and all other monetary expenditures made or incurred, and any and all monetary loss that the People may have suffered by reason of the failure of the defendant to appear at the time specified.

In this case it appears that the defendant was pursued, apprehended, and returned by the People, and without any assistance from those answerable for his appearance. In such case the relief afforded sureties by

C.R.S. '53, 39-2-18, is not available to them, and in such case judgment should be entered for the penal sum of the bond, unless the court, in light of all of the circumstances surrounding defendant's failure to appear, in the exercise of its sound discretion may see fit to enter judgment for an amount less than the penal sum of the bond. In no event should judgment be entered for an amount less than the full amount of costs occasioned by the defendant's failure to appear.

It is often difficult to say just what constitutes the exercise of a reasonable or sound discretion in granting or denying a request for full or partial remission of a bond forfeiture judgment.

In *People v. Fiannaca,* 306 N. Y. 513, 119 N. E. (2d) 363, the Court of Appeals affirmed a judgment of the Appellate Division, 282 App. Div. 548, 125 N. Y. S. (2d) 398. The Appellate Division had reversed a judgment of the Erie County Court which had granted a petition for full remission of a $10,000 judgment entered by it following the forfeiture of an appearance bond. The Court of Appeals stated:

"* * * Where a defendant is produced within a reasonable time after forfeiture, a remission will be granted if the People have not lost any rights as a result of his nonappearance especially if his failure to appear was other than deliberate and willful. * * *. On the other hand, where the defendant is not produced at all, or turns up only after a long lapse of time, the courts will ordinarily deny remission without regard to the mitigating factors asserted in connection with his nonappearance. There are exceptions, of course. Death, insanity, imprisonment on another charge may, under some circumstances, warrant remission. * * *.

"Apart from these considerations, however, the only factor which the courts of this state have considered as basis for remission where the principal disappears is whether the surety will thereby suffer 'extreme hardship,' such hardships as 'will cause destitution to a fam-

ily, deprive children of support and education, or creditors of their just debts.' * * * By and large, the courts have tended — 'where the accused was *not* in custody and produced' People v. Parkin, supra, 263 N.Y. 428, 432, 189 N.E. 480, 482, (emphasis supplied) — to hold sureties to strict liability upon the disappearance of their principal. The reason is easily to be perceived; 'there is a principle involved beyond that of clemency to the bondsman. Justice may be defeated by the escape of the principal, and, if it is clearly understood that the bondsman will be held rigidly accountable for the escape, the administration of the criminal law will be promoted.' * * *."

We subscribe to the foregoing language and the same should serve as a useful guide to courts called upon to exercise a sound discretion in granting or denying applications for remission from forfeitures or judgments.

Applying the foregoing to the facts here presented, it becomes manifest that Stuyvesant, having obligated itself to the extent of $2500.00, is not eligible for any relief under C.R.S. '53, 39-2-18, and it cannot qualify for relief as one suffering from "extreme hardship" as defined in *People v. Fiannaca,* supra.

As an end result of the "judicial process" here recorded, there are two money judgments against Galindo, who does not and never did owe anything. Ironically, the People, who so far have completely failed to establish any rights under the bond, are here seeking relief in excess of that erroneously granted by the trial court.

On February 13, 1963, when Judge Keating conducted a hearing and at the conclusion thereof ordered Galindo to pay $731.78, he was well aware of the fact that Judge Luby had, only six days before, on account of the same matters, ordered Galindo to pay $1097.10. Judge Keating did not expressly undertake to vacate or modify the judgment of Judge Luby; however, if effect were to be given to his judgment, it would constitute major surgery on the judgment of Judge Luby. Judge Keating, in

proceeding on February 13, may have been unaware of, certainly he was unmindful of, C.R.S. '53, 37-4-18, which provides:

"While sitting separately, the courts held by the several judges, each of them shall be known as the district court of the county wherein and wherefor such court may be held, and shall have the same power to vacate or modify its own judgments, decrees or orders rendered or made while so held, as if the said court were composed of a single judge; provided, that neither of said judges shall have power to vacate or modify a judgment, decree or order rendered or made by another judge of the same court."

We conclude and hold that all proceedings herein had subsequent to May 24, 1962, are in error, some are without jurisdiction, others lacking in due process, all devoid of validity.

The ex parte order of February 18, 1963, to the effect that "this bond released" is void and is hereby ordered vacated, set aside, and held for naught.

The two purported money judgments against Galindo are ordered vacated and held for naught.

The purported judgments of Judge Luby and Judge Keating are reversed and the cause remanded to the trial court with directions to vacate all orders entered subsequent to May 24, 1962, and to determine the rights of the People and the duties of Stuyvesant and Stafford, as provided in the bond in question, such determination to be made in proceedings consistent with the views herein expressed and applicable to the fact situation as presented.