The PEOPLE of the State of Colorado,
Plaintiff–Appellant,

v.

Cesar CARO, Defendant,

and concerning

Marta Caro, Surety–Appellee.

No. 86SA312.

Supreme Court of Colorado,
En Banc.

March 14, 1988.

Rehearing Denied April 4, 1988.

Norman S. Early, Jr., Dist. Atty., Second Judicial Dist., Nathan B. Coats, Chief Appellate Deputy Dist. Atty., Denver, for plaintiff-appellant.

Gary Lozow, Lozow, Lozow and Elliott, Denver, for surety-appellee.

MULLARKEY, Justice.

The People appeal from the district court's order remitting part of the defendant's bail bond to the appellee, Marta Caro. We reverse the order and remand the matter to the district court with directions to deny the appellee's motion for remission.

### I.

In 1982, the defendant, Cesar Caro, was arrested and charged with unlawful possession of cocaine. On August 13, 1982, he was released on a $200,000 bail bond; pursuant to a court order, he paid $100,000 in cash and the remaining $100,000 was a personal recognizance bond. The defendant's mother, Sorita Caro, provided the $100,000 in cash by mortgaging property she owned in Colombia, South America, but his sister, Marta Caro, signed the bond as the surety.[1]

On October 5, 1982, the defendant failed to appear for the second day of his criminal trial. The district court judge ordered the bond to be forfeited and ordered the defendant and the surety to appear in court on December 6, 1982, to show cause why judgment should not be entered against them on the forfeiture. The trial continued in the defendant's absence, and he was convicted. On December 6, 1982, neither the defendant nor the surety appeared in court for the show cause hearing, and the district court entered judgment for $100,000 against the surety.

During July of 1984, the defendant was apprehended in St. Louis, Missouri, by the Federal Bureau of Investigation. On July 25, 1984, the Denver sheriff's office returned the defendant to Colorado. He was sentenced on October 23, 1984. On May 12, 1986, the surety moved for remission of the bond. Although the defendant's mother actually had posted the defendant's bail bond, she did not move to intervene in the remission proceedings.[2] After a hearing at which the defendant's mother was the only witness, the district court ordered that the bond be remitted to the surety and that the surety pay a $15,000 fine and slightly over $1,000 in costs which the Denver sheriff's department had incurred when it returned the defendant to Colorado. A check for $83,974.76, made payable to the surety and her attorney, was issued to the surety's attorney for placement in an interest-bearing account until further order of the court. The People appealed. We have jurisdiction of the appeal pursuant to section 16-12-102(1), 8A C.R.S. (1986), and C.A.R. 4(b)(2).

### II.

When a surety has posted bond, as Marta Caro did, the surety is exonerated and her money is returned if the accused person satisfies the condition or conditions of the bond which, in this case, required Cesar Caro to appear for trial. § 16-4-108(1)(a), 8 C.R.S. (1978);[3] Crim.P.

---

1. There is some confusion as to whether Marta Caro or Sorita Caro is the surety. At the June 3, 1986, hearing on the motion for remission, Sorita Caro testified that she had posted the bond. However, Marta Caro is named as the surety in the appearance bond; she filed the motion for remission as surety; and the order being appealed from directed that $83,974.76 be remitted to her. Therefore, Marta Caro, not Sorita Caro, is technically the surety-appellee.

2. Our case law permits one who is in the position of the defendant's mother to intervene as a party in the bond remission proceeding and to appeal an adverse decision. *Allison v. People*, 132 Colo. 156, 286 P.2d 1102 (1955). Although

Sorita Caro did not intervene properly in this case, the district attorney did not object to her participation and we will consider her claims as well as those of the surety.

3. Because Marta Caro moved for remission on May 12, 1986, the version of the pretrial bail statute in effect at that time, sections 16-4-101 to -111, 8 C.R.S. (1978 & 1985 Supp.), controls our analysis. Section 16-4-108(1), 8 C.R.S. (1978 & 1985 Supp.), regarding exoneration from bond liability, provided that:

Any person executing a bail bond as principal or as surety shall be exonerated as follows:
(a) When the condition of the bond has been satisfied; or

46(a)(7)(I)(A).[4] If the accused fails to appear at the set time, the court (1) immediately should order the bond to be forfeited and (2) should order both the accused and the surety to show cause why judgment on the forfeiture should not be entered against them. *See* §§ 16-4-109(2), 16-4-110, 8 C.R.S. (1978); Crim.P. 46(a)(8)(II), (9); *see also People v. Johnson*, 155 Colo. 392, 398, 395 P.2d 19, 22 (1964) (prosecutor should request forfeiture promptly, because delay "may well leave with defendants and sureties the impression that bonds are of minor importance and [may] be ignored with slight danger of any appreciable adverse effect on them."). As noted, the statute plainly distinguishes between forfeiture and the entry of final judgment on the forfeiture.

> (b) When the amount of the forfeiture has been paid; or
> (c) Upon surrender of the defendant into custody at any time before a judgment has been entered against the sureties for forfeiture of the bond, upon payment of all costs occasioned thereby. A surety may seize and surrender the defendant to the sheriff of the county wherein the bond is taken, and it is the duty of the sheriff, on such surrender and delivery to him of a certified copy of the bond by which the surety is bound, to take the person into custody and, by writing, acknowledge the surrender....

Section 16-4-109(2), (3), 8 C.R.S. (1978), stated that:

> (2) Where the defendant has been released upon deposit of cash, stocks, or bonds or upon a surety bond secured by property, if the defendant fails to appear in accordance with the primary condition of the bond, the court shall declare a forfeiture. Notice of the order of forfeiture shall be mailed forthwith by the court to the defendant and sureties, if any, at their last known address. If the defendant does not appear and surrender to the court having jurisdiction within thirty days from the date of the forfeiture or within that period satisfy the court that appearance and surrender by the defendant is impossible and without his fault, the court shall enter judgment for the state against the defendant for the amount of the bail and costs of the court proceedings. Any cash deposits made with the clerk of the court shall be applied to the payment of costs. If any amount of such cash deposit remains after the payment of costs, it shall be applied to payment of the judgment.
> (3) The court may order that a forfeiture be set aside, upon such conditions as the court may impose, if it appears that justice so requires.

If the accused fails to appear in accordance with the terms of the bail bond, the surety can obtain the return of the money she posted only by one of three methods. First, at any time before judgment is entered against her on the forfeiture of the bond, she will be exonerated if she surrenders the defendant into custody and pays all costs occasioned by the defendant's failure to appear at the set time. § 16-4-108(1)(c), 8 C.R.S. (1978); Crim.P. 46(a)(7)(I)(C). Second, if, within thirty days of the forfeiture, the defendant either surrenders or satisfies the court that "appearance and surrender by the defendant is impossible and without his fault," judgment need not be entered against the surety. § 16-4-109(2), 8 C.R.S. (1978); Crim.P.

Section 16-4-110, 8 C.R.S. (1978), read as follows:

> **Enforcement when forfeiture not set aside.** By entering into a bond, each obligor, whether he is the principal or a surety, submits to the jurisdiction of the court. His liability under the bond may be enforced, without the necessity of an independent action, as follows: The court shall order the issuance of a citation directed to the obligor to show cause, if any there be, why judgment should not be entered against him forthwith and execution issue thereon. Said citation may be served personally or by certified mail upon the obligor directed to the address given in the bond. Hearing on the citation shall be held not less than twenty days after service. The defendant's attorney and the prosecuting attorney shall be given notice of the hearing. At the conclusion of the hearing, the court may enter a judgment for the state and against the obligor, and execution shall issue thereon as on other judgments. The district attorney shall have execution issued forthwith upon the judgment and deliver it to the sheriff to be executed by levy upon the stocks, bond, or real estate which has been accepted as security for the bond.

4. The provisions of Crim.P. 46 which apply to this case simply paraphrased the statutory sections quoted above in footnote 3. Crim.P. 46 was repealed and readopted, effective September 1, 1987. The current version states in full: "In considering the question of bail, the Court shall be governed by the statutes and the Constitution of the State of Colorado and the United States Constitution." Because this version was not adopted until well after the determinative events in this case, all citations to Crim.P. 46(a)(7), (8), and (9) are to the rule as adopted on April 1, 1974, and in effect until September 1, 1987.

46(a)(8)(II); *see also Allison v. People*, 132 Colo. 156, 286 P.2d 1102 (1955) (for example, when appearance of accused is made impossible by physical or mental illness or incarceration, justice does not require that judgment be entered against surety). Finally, "[t]he court may order that a forfeiture be set aside, upon such conditions as the court may impose, if it appears that justice so requires." § 16–4–109(3), 8 C.R. S. (1978); Crim.P. 46(a)(8)(III). If none of these methods is used successfully, judgment on the forfeiture is entered. Once judgment has entered, the statute provides no method to set it aside.

### III.

In this case, the district court promptly sent notice to the defendant and the surety that the bond had been forfeited and ordered them to show cause why judgment should not be entered. Because the surety did not surrender the defendant into custody prior to entry of judgment on the forfeiture, she was not entitled to be exonerated pursuant to section 16–4–108(1)(c) and Crim.P. 46(a)(7)(I)(C). Neither the defendant nor the surety appeared for the hearing on the order to show cause, and neither submitted any written response. Accordingly, nothing in the record suggested that the defendant's appearance was impossible for reasons not his fault, and relief pursuant to section 16–4–109(2) and Crim.P. 46(a)(8)(II) was unavailable.

■ The surety relied solely on the third method described above, that a district court can set aside a forfeiture if justice so requires. § 16–4–109(3); Crim.P. 46(a)(8)(III). However, the relevant versions of the rule and statute only authorize the setting aside of a forfeiture *prior* to judgment, not the remission of the bond after a final judgment is entered on the forfeiture. By its terms section 16–4–109(3) refers only to setting aside a forfeiture; no reference is made to setting aside a judgment on a forfeiture. The statutory structure, as indicated by the titles of the sections, deals with forfeitures in section 16–4–109 and with judgments on forfeitures in section 16–4–110. Given this separate treatment, there is no basis to read a reference to setting aside a judgment on a forfeiture into section 16–4–109(3).

The history of the rule and statute also refutes the surety's contention that section 16–4–109(3) should be read to include authority to set aside a judgment on a forfeiture. The People correctly note that prior to April 1, 1974, the Colorado Rules of Criminal Procedure permitted the court to order remission after entry of judgment if it appeared that justice did not require enforcement of the forfeiture. *See* Crim.P. 46(e)(4) (1963); *cf.* Fed.R.Crim.P. 46(e)(4) (authorizing remission of bail after entry of judgment). When the legislature revised the bail statute in 1972, it followed the 1963 version of Crim.P. 46 in large part. For example, it explicitly provided for exoneration of a surety prior to judgment in language almost identical to that in former Crim.P. 46(f). *See* Ch. 44, sec. 1, § 39–4–108(1), 1972 Colo.Sess.Laws 190, 207 (now codified, with only minor changes, at section 16–4–108(1)). It also authorized courts to set aside forfeitures prior to judgment in terms similar to former Crim.P. 46(e)(2). *See* Ch. 44, sec. 1, § 39–4–109(3), 1972 Colo.Sess.Laws 190, 208 (now codified at section 16–4–109(3)). Finally, it adopted the language of Crim.P. 46(e)(3) to provide for enforcement when a forfeiture was not set aside. *See* Ch. 44, sec. 1, § 39–4–110, 1972 Colo.Sess.Laws 190, 208 (now codified, with only minor changes, at section 16–4–110). However, it failed to authorize any postjudgment remission of bonds similar to that which had been available under Crim. P. 46(e)(4). Accordingly, in 1974, we amended Crim.P. 46 and deleted the section which had authorized postjudgment relief.

The fact that the relevant versions of the Colorado rule and statute no longer provide for any method of postjudgment remission is critical. We simply cannot read back into the rule and statute language which has been removed deliberately. There is nothing from which we can infer an intent to allow district courts to vacate judgments on the forfeiture in a wider range of circumstances than those in which they can vacate other types of judgments. *Cf.*

Mass.Gen.Laws Ann. ch. 276, §§ 76, 81 (West 1972) (allowing review after judgment has been entered when the defendant has surrendered or been recaptured, or for sufficient cause which could not have been ascertained prior to judgment). Hence, we find no basis in the rule or statute for allowing postjudgment relief.

## IV.

As the surety notes, the district court is a court of general jurisdiction. However, once it has entered a final judgment, it has jurisdiction to vacate that judgment only under very limited circumstances, such as when a timely motion is filed pursuant to Crim.P. 35, C.R.C.P. 59, or C.R.C.P. 60. *Cf. People v. Canaccini*, 52 Ill.App.3d 811, 10 Ill.Dec. 647, 368 N.E.2d 133 (1977) (because bail statute did not provide a mechanism for setting aside judgments on forfeitures, civil rules applied and trial court lost jurisdiction thirty days after judgment was entered).

The district attorney, citing C.R.C.P. 60, concedes that a trial court would have jurisdiction to set aside this kind of judgment in a proper case.[5] He correctly observes that the standards for relief under that rule are different from and more limited than the criteria for setting aside a forfeiture prior to judgment in section 16-4-109(3). Accordingly, we next consider whether this is an appropriate case for relief by analogy to C.R.C.P. 60(b).[6]

The surety's arguments in favor of remission cannot be interpreted reasonably as stating a ground for relief based on any ground in C.R.C.P. 60(b)(1)-(4), and her mo-tion for remission was not filed within six months, as required for motions based on C.R.C.P. 60(b)(1) and (2). Accordingly, we analyze this case only under the ground stated in C.R.C.P. 60(b)(5). In doing so, we do not imply that, under other circumstances, a judgment on a forfeiture could not be vacated based on fraud, mistake, or the other grounds provided by C.R.C.P. 60(b)(1)-(4).

■ C.R.C.P. 60(b) provides for relief from judgment based on, inter alia, any "reason justifying relief from the operation of the judgment," C.R.C.P. 60(b)(5), and requires that "[t]he motion shall be made within a reasonable time." We have explained previously that C.R.C.P. 60(b)(5) permits postjudgment relief only in extreme or extraordinary situations. *Cavanaugh v. State, Dep't of Social Servs.*, 644 P.2d 1, 5 (Colo.) (C.R.C.P. 60 "is meant to provide relief in the interests of justice in extraordinary circumstances"), *appeal dismissed*, 459 U.S. 1011, 103 S.Ct. 367, 74 L.Ed.2d 502 (1982); *Atlas Constr. Co. v. District Court*, 197 Colo. 66, 69, 589 P.2d 953, 956 (1979) (like Fed.R.Civ.P. 60(b)(6), this clause covers only "extreme situations"); *see also Sisneros v. First Nat'l Bank*, 689 P.2d 1178, 1183 (Colo.Ct.App. 1984). Rule 60(b)(5) must be interpreted narrowly, to avoid undercutting the finality of judgments. *Cavanaugh*, 644 P.2d at 5.

■ *Owens v. People*, 194 Colo. 389, 572 P.2d 837 (1977), is an example of an extreme situation which would justify postjudgment relief by analogy to C.R.C.P. 60(b)(5).[7] There, the defendant had re-

---

5. The district attorney does not contend that the surety's motion failed to state a claim under C.R.C.P. 60(b) and that issue is not before us.

6. Crim.P. 57 provides that we look to the Rules of Civil Procedure for guidance because no Colorado Rule of Criminal Procedure governs this type of situation.

7. When *Owens* was decided, the same versions of Crim.P. 46(a)(8)(III) and section 16-4-109(3) which we consider in this opinion were in effect. We disapprove *Owens* to the extent that it could be read as finding authority in the rule or the statute to set aside a judgment on a forfeiture. As explained in the text, however, we believe the result reached in *Owens* was correct.

The doctrine of stare decisis does not preclude our consideration of whether the statute or rule permits remission after judgment on a forfeiture because the record in *Owens* shows that that question was neither argued by the parties nor considered by the court. Stare decisis "is limited to actual determinations in respect to litigated and necessarily decided questions." *Black's Law Dictionary* 1261 (5th ed. 1979); *see also Huydts v. Dixon*, 199 Colo. 260, 262-63, 606 P.2d 1303, 1305 (1980) (applying stare decisis when court had "carefully considered" the same question in prior cases and had recently "specifically reject[ed]" the same contention); *City & County of Denver v. Duffy Storage & Moving Co.*, 168 Colo. 91, 450 P.2d 339 (quoting *People v.*

turned voluntarily to Colorado after entry of judgment on the forfeiture, and the bondsman had delivered him to the sheriff less than one year after his scheduled appearance date. The parties stipulated that the People had incurred no expenses as a result of the defendant's failure to appear promptly and that the defendant's mother's contractual obligation to repay the bondsman was "working an extreme hardship on her and her family in that often her children [had to] go without food and clothing." 194 Colo. at 390–91, 572 P.2d at 838. We held that given "the unique facts" of that case, the trial court should have ordered remission.

While our decisions based on the prior versions of the statute and rules governing pretrial bail are not dispositive of this case, they do provide guidelines for determining what constitutes an extraordinary situation meriting postjudgment relief. For example, in *People v. Johnson*, 155 Colo. 392, 395 P.2d 19, we restated the presumption that when a defendant is captured without assistance from the surety, judgment will be entered on the forfeiture and postjudgment remission will be unavailable. We agreed with the New York Court of Appeals that, although the defendant's death, insanity, or imprisonment, as well as extreme hardship to the surety, sometimes may warrant postjudgment remission of the bond, generally sureties should be held rigidly accountable in order to promote the administration of the criminal law. 155 Colo. at 400–01, 395 P.2d at 23 (quoting *People v. Fiannaca*, 306 N.Y. 513, 119 N.E.2d 363, 365–66 (1954)). *See also Van Gilder v. City & County of Denver*, 104 Colo. 76, 82, 89 P.2d 529, 532 (1939) ("right of the surety to discharge is statutory and terminates with final judgment," except possibly in cases of unintentional default due to illness or incarceration); *People v. Young*, 29 Colo.App. 522, 524, 487 P.2d 817, 818 (1971) (while cost to prosecuting authority is one consideration with respect to remission, "more important element is

the prompt administration of the criminal law."); *cf. Allison*, 132 Colo. 156, 286 P.2d 1102 (justice does not require judgment to be entered on forfeiture when it would have been physically impossible for accused to have appeared promptly).

 In the case before this court, the trial court held a hearing and the surety did not introduce any evidence proving the existence of an extreme situation. The evidence showed that the defendant was incarcerated only because he was captured by law enforcement officers. While he was a fugitive, he telephoned his family several times and visited his parents' house once, but none of his relatives made any effort to contact law enforcement officers or to help the authorities locate the defendant. The lack of assistance provided by the surety weighs heavily against remission, because the primary purpose of a bail bond is to assure that the defendant appears for trial. *See, e.g., Owens*, 194 Colo. at 391, 572 P.2d at 838 (surety has incentive to help recapture defendant in order to avoid entry of judgment against herself); *cf. Herbertson v. People*, 160 Colo. 139, 143, 415 P.2d 53, 55 (1966) (quoting *Tanquary v. People*, 25 Colo.App. 531, 539, 139 P. 1118, 1121 (1914), which stated that sole purpose of bail obligation is to produce defendant in court). In addition, this is not a case where the defendant's failure to appear was outside his control. The defendant told his mother that his lawyer told him he did not have to appear in court for the second day of his trial. This not only seems unlikely, but it also fails to explain why the defendant did not appear for almost two years after his trial had ended. Finally, while the defendant's mother would like to have the money to buy a house in New York City, she introduced no evidence of destitution or extreme hardship. The surety is a staff sergeant in the army, a Spanish instructor, and a translator at a deaf language institute. The record contains no evidence of her financial situation other than that she

---

*McPhail*, 118 Colo. 478, 197 P.2d 315 (1948), which stated that stare decisis applied when question had been previously decided after able arguments and careful consideration in a case

that was clearly on point), *appeal dismissed*, 396 U.S. 2, 90 S.Ct. 23, 24 L.Ed.2d 1 (1969). The conditions for application of stare decisis are not present here.

is employed and helps support her parents. In short, extraordinary circumstances justifying remission of the bond were not proved.

## V.

The district court's order granting partial remission is reversed and the matter is remanded to the district court with instructions to deny the surety's motion for remission.

LOHR, J., dissents, and VOLLACK, J., joins in the dissent.

LOHR, Justice, dissenting:

The majority holds that section 16–4–109(3), 8 C.R.S. (1978), and Crim.P. 46(a)(8)(III) authorize a court to set aside a forfeiture of a bail bond only before judgment of forfeiture has been entered. The majority further states that since the criminal procedure rules do not provide for post-judgment relief in bail bond cases, such relief is available only under the terms of C.R.C.P. 60(b), which does not allow a judgment to be set aside unless extreme or extraordinary circumstances are established. In *Owens v. People*, 194 Colo. 389, 572 P.2d 837 (1977), however, we held that section 16–4–109(3) and Crim.P. 46(a)(8)(III) allow a trial court discretion to set aside a judgment of forfeiture in whole or in part if it appears that justice so requires. I would adhere to that decision. I also would hold that the trial court did not abuse its discretion in this case. Therefore, I respectfully dissent.

## I.

Section 16–4–109 provides in relevant part:

(2) Where the defendant has been released upon deposit of cash, stocks, or bonds or upon a surety bond secured by property, if the defendant fails to appear in accordance with the primary condition of the bond, the court shall declare a forfeiture. Notice of the order of forfeiture shall be mailed forthwith by the court to the defendant and sureties, if any, at their last known address. If the defendant does not appear and surrender to the court having jurisdiction within thirty days from the date of the forfeiture or within that period satisfy the court that appearance and surrender by the defendant is impossible and without his fault, the court shall enter judgment for the state against the defendant for the amount of the bail and costs of the court proceedings. Any cash deposits made with the clerk of the court shall be applied to the payment of costs. If any amount of such cash deposit remains after the payment of costs, it shall be applied to payment of the judgment.

(3) The court may order that a forfeiture be set aside, upon such conditions as the court may impose, if it appears that justice so requires.

In support of its conclusion that subsection (3) permits only orders of forfeiture, not judgments of forfeiture, to be set aside, the majority states that the statute plainly distinguishes between an order of forfeiture and an entry of final judgment on a forfeiture. However, the language of section 16–4–109(3) makes no such precise distinction, and courts have not been careful in differentiating between the order of forfeiture and the entry of judgment of forfeiture, referring to each as a forfeiture of the bond. *See Owens v. People*, 194 Colo. 389, 572 P.2d 837 (1977); *People v. Mendez*, 708 P.2d 126 (Colo.App.1985).

The majority makes a persuasive argument that the history of the statute and the rule supports a construction that section 16–4–109(3) relates only to orders of forfeiture, not judgments of forfeiture. The majority's interpretation, however, is not the only reasonable reading of the statutory scheme, and it is expressly contrary to the construction adopted by this court only eleven years ago in *Owens v. People*, 194 Colo. 389, 572 P.2d 837 (1977). Principles of stare decisis counsel that we follow that decision. *See, e.g., Huydts v. Dixon*, 199 Colo. 260, 606 P.2d 1303 (1980); *Jennings v. Bradfield*, 169 Colo. 146, 454 P.2d 81 (1969); *City & County of Denver v. Duffy Storage & Moving Co.*, 168 Colo. 91, 450 P.2d 339 (1969).

The statutory structure and the language of section 16–4–109 readily lend themselves to the interpretation adopted in *Owens v. People.* Sections 16–4–108(1) and 109(2) set forth the ways that a surety can be exonerated from liability on a bail bond prior to judgment of forfeiture. Under section 108(1) exoneration follows when the condition of the bond has been satisfied, when the amount of the forfeiture has been paid, or when the defendant has been surrendered into custody prior to entry of judgment of forfeiture and all costs have been paid. Section 109(2) provides that after an order of forfeiture has been issued for failure of a defendant to appear, judgment on the forfeiture can be avoided only if the defendant appears and surrenders to the court having jurisdiction within thirty days from the date of the forfeiture or the court is satisfied within that period that appearance and surrender by the defendant is impossible and without his fault. Absent compliance with one of these two requirements, "the court shall enter judgment for the state against the defendant for the amount of the bail and costs of the court proceedings." § 16–4–109(2). *After* the provisions for exoneration in sections 16–4–108(1) and 109(2) and *after* the requirement for entry of judgment in absence of exoneration in section 16–4–109(2), the statute sets forth in section 16–4–109(3) the basis upon which a "forfeiture" may be set aside. Section 16–4–110 then goes on to elaborate upon the procedure to be followed in obtaining a judgment against the surety following the order of forfeiture, and makes provision for enforcement of the judgment. This statutory organization strongly suggests that the provision of section 16–4–109(3) for setting aside a "forfeiture," coming as it does after the provisions for exoneration of the surety and the entry of judgment in absence of such exoneration, relates to the judgment of forfeiture, not the order of forfeiture. So construed, it serves the important purpose of allowing a court flexibility to achieve a just result when conditions change after judgment—as when a defendant surrenders to authorities and no prejudice has been caused to the state. This flexibility is further promoted by the provision in section 16–4–109(3) that the court may impose conditions on setting aside a forfeiture.

In *People v. Owens,* we expressly relied on section 16–4–109(3) and the corresponding criminal procedure rule, Crim.P. 46(a)(8)(III), as then in effect,[1] in allowing postjudgment remission of a bail bond. In *Owens,* the defendant failed to appear for his probation revocation hearing as required under his bail bond. The court declared a forfeiture of the bond and subsequently entered judgment on the forfeiture.[2] The defendant later returned voluntarily to Colorado, and the bondsman surrendered him to custody less than one year after his scheduled appearance date. The bondsman then filed a motion for return of the forfeited bond. The parties stipulated that the People had not incurred any expenses or lost any legal rights as a result of the defendant's failure to appear and that the contractual obligation of the defendant's mother to repay the bondsman was working an extreme hardship on her and her family. The district court denied the motion for the remission of the bond, and the court of appeals affirmed. *People v. Schliesser,* 39 Colo.App. 54, 563 P.2d 377 (1977).

This court granted certiorari and reversed the court of appeals. We determined that section 16–4–109(3) applied even though a judgment had been entered, stating:

> The decision as to whether or not a forfeited bond should be remitted is entrusted to the trial court's discretion by

1. Crim.P. 46 was repealed and readopted on April 2, 1987, effective September 1, 1987. It now provides in its entirety:
 In considering the question of bail, the Court shall be governed by the statutes and the Constitution of the State of Colorado and the United States Constitution.

2. Our decision does not explicitly state that a judgment was taken on the forfeiture, but the court of appeals' opinion and the trial court record confirm that the trial court entered judgment. *See People v. Schliesser,* 39 Colo.App. 54, 55, 563 P.2d 377, 378, *rev'd sub nom. Owens v. People,* 194 Colo. 389, 572 P.2d 837 (1977).

section 16–4–109(3), C.R.S. 1973 and Crim.P. 46(a)(8)(III). Both of these provisions state that bond forfeitures may be vacated "if it appears that justice so requires." This standard is essentially an appeal to the conscience of the court. No clear rule can be set down which will guide the trial court in every case since the facts and circumstances of each individual case must be considered in their totality. No one factor will be determinative in all cases.

*Id.* 194 Colo. at 391, 572 P.2d at 838. The court of appeals has since followed our holding in *Owens*. *See People v. Mendez*, 708 P.2d 126 (Colo.App.1985); *People v. Saviano*, 677 P.2d 414 (Colo.App.1983); *People v. Rothe*, 43 Colo.App. 274, 606 P.2d 79 (1979). The People argue in their brief that *Owens* was wrong and should be overruled. In footnote 7 to its opinion, the majority "disapproves" *Owens* to the extent the case relies on section 16–4–109(3) or Crim.P. 46(a)(8)(III), thereby rejecting completely the analysis upon which we relied in deciding *Owens*. The majority approves the result in *Owens*, however, as a proper outcome under C.R.C.P. 60(b)(5), an authority not discussed or even cited in *Owens*. I am unpersuaded that *Owens* was incorrect in its analysis. It is based upon a reasonable reading of the statute and rule, one that gives a court flexibility to tailor a result to fit the circumstances in order to accord fairness to both the surety and the state. In any event, sound principles of stare decisis militate against overruling that decision. *See, e.g., People v. Quimby*, 152 Colo. 231, 235, 381 P.2d 275, 277 (1963) ("The doctrine of 'stare decisis' should be adhered to in the absence of sound reason for rejecting it."); *Creacy v. Industrial Comm'n*, 148 Colo. 429, 433, 366 P.2d 384, 386 (1961) (The doctrine "has for its object, uniformity, certainty, and stability of the law" and "will not be departed from for slight or trivial causes, and certainly not where such departure would promote injustice or defeat justice.").

## II.

Under *Owens*, the decision as to whether a forfeited bond should be remitted is within the trial court's discretion, and the trial court's determination should not be disturbed absent an abuse of discretion. 194 Colo. at 391, 572 P.2d at 838. In *Owens*, we elaborated upon the reasons for bail bonds and the standards to be applied by a trial court in exercising its discretion to remit such bonds. We said:

> We stated the policy of this state with respect to forfeited bonds in *Allison v. People*, 132 Colo. 156, 286 P.2d 1102 (1955) where we quoted with approval the following statement relating to the giving of bail from *State v. Jakshitz*, 76 Wash. 253, 136 P. 132 (1913):
>
> "... That the state may be relieved of the burden of keeping an accused person; that the innocent shall not be confined pending a trial and formal acquittal; that, in cases of flight, a recapture may be aided by the bondsmen who, it is presumed will be moved by an incentive to prevent judgment, or, if it has been entered, to absolve it and to mitigate its penalties. *To accomplish these things and others, courts have been liberal in vacating judgments entered on bail bonds, exercising always a broad discretion and in proper cases preserving the equities of the public by deducting such costs and expenses as may have been incurred by the state.* To hold otherwise would discourage the giving of bail and defeat the manifest purpose of the statute." (emphasis supplied)
>
> In addition, we stated in *Smith v. People*, 67 Colo. 452, 184 P. 372 (1919), that "The enriching of the public treasury is no part of the object at which the proceeding is aimed. There is no reason for penalizing the sureties when it appears that they are unable by no fault of their own or of their principal, to perform the condition of the bond."

*Id.*

In the case now before us, the district court held a hearing, listened to the arguments from both sides, and determined that a partial remission was appropriate. It ordered remission of the $100,000 cash deposit less a $15,000 fine and $1,025.24 to cover the costs incurred by law enforcement authorities in returning the defendant to Colorado. Although the defendant was

absent for almost two years before being returned to Colorado authorities, the prosecution suffered no prejudice to its legal rights, since the defendant was convicted, and the costs to the state resulting from the defendant's failure to appear were paid out of the bond. The cash for the bond was provided by the defendant's elderly mother, a Colombian national. She appeared as the only witness at the hearing and testified through an interpreter that she is in poor health and living in New York with her husband on a limited income of $430 per month with a grandchild to support. She testified that the couple had invested their life savings in property in Colombia which they were forced to mortgage to obtain the cash for the bond. While it is true that the Caros did not report their son's occasional telephone calls from undisclosed locations or surrender him to the police when he came to visit them on one occasion, they did encourage him to surrender to the authorities. The assessment of the credibility of the witness was a function of the trial court. On this record, it appears that the district court gave credence to the testimony, applied the proper legal standards, and acted within the range of its discretion in ordering partial remission of the bond. I would affirm the order of the district court.

VOLLACK, J., joins in this dissent.