Fred MORENO, Surety–Petitioner,

and concerning

Irma Maestas, Defendant,

v.

The PEOPLE of the State of Colorado, Respondent.

The PEOPLE of the State of Colorado, Petitioner,

v.

Leslie Jean STONEHART, Defendant,

and concerning

Dianne Wimberly, Surety–Respondent.

Nos. 87SC407, 87SC412.

Supreme Court of Colorado, En Banc.

June 26, 1989.

Thomas A. Wallace, Denver, for surety-petitioner in No. 87SC407.

Ralph B. Rhodes, Christopher C. Beasley, Denver, for surety-respondent in No. 87SC412.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., David L. Saine, Asst. Atty. Gen., Denver, for respondent in No. 87SC407; for petitioner in No. 87SC412.

MULLARKEY, Justice, delivered the Opinion of the Court.

We granted certiorari to review two decisions of the court of appeals concerning the statutory notice which must be given by a trial court after it enters an order forfeiting a bail bond. *See People v. Maestas,* 748 P.2d 1351 (Colo.Ct.App.1987), and *People v. Stonehart,* 748 P.2d 1353 (Colo.Ct. App.1987). We conclude that the court of appeals improperly created a presumption of prejudice. We reverse the court of appeals' judgment in *Stonehart* and affirm its judgment in *Maestas.*

## I.

Colorado law permits a surety to post a bond for the pre-trial release of a criminal defendant. § 16–4–104(1)(b)(III), 8A C.R.S. (1986). The purpose of the bond is to ensure that the defendant appears and "[o]nce a bond has been executed and the person released from custody thereon," the bond continues in effect "until final disposition of the case in the trial court." § 16–4–106, 8A C.R.S. (1986). If a defendant fails to appear, the court declares the defendant's bond forfeited. § 16–4–109(2), 8A C.R.S. (1986). In each of the cases now before us, the defendant failed to appear and the trial court ordered the forfeiture of the bond posted by the surety.

In *Stonehart,* the defendant failed to appear at a preliminary hearing on August 14, 1985 in San Miguel County District Court. His surety was Dianne Wimberly who is located in Denver but who posted this bond through the Montrose County Sheriff's Department on August 9, 1985. The bond contained Wimberly's printed and signed name but did not contain her address. The record before us does not include a copy of the show cause order issued by the district court directing Wimberly to appear and show cause why judgment should not be entered on the order of forfeiture, but the parties agree that such notice was sent to Wimberly on September 26, 1985 and received by her on September 30, 1985. On September 26 the clerk also commenced the thirty-day period within which Wimberly was able to surrender the defendant to the court pursuant to section 16–4–109(2), 8A C.R.S. (1986). Wimberly filed a response alleging that the trial court failed to give forthwith notice as required under section 16–4–109(2). She claimed that the purpose of the notification requirement was to give the surety "an immediate opportunity to locate the defendant" and that "[d]elay in notification compromises the intent of the statute."

After a continuance at the surety's request, a hearing was held and Wimberly appeared through her counsel. The evidence established that the delay in mailing the notice of the order of forfeiture occurred because Wimberly's address was not on the bond and the clerk of court had to make several efforts before she obtained the address. The trial court found that Wimberly had an obligation to provide the clerk with her address and that the clerk "made a good faith effort to acquire and obtain that address as quickly as was reasonably possible." It further found that, once the clerk obtained Wimberly's address, she immediately notified her. The trial court concluded that the notification complied with the statute and entered judgment on the order of forfeiture.

The court of appeals reversed the trial court's judgment, based on its interpretation of section 16–4–109(2) which states in relevant part:

> Notice of the order of forfeiture shall be mailed forthwith by the court to the defendant and sureties, if any, at their last known address.

The court held that the notice given was not forthwith and it adopted a presumption of prejudice to the surety from the trial court's failure to give forthwith notice. It found that the presumption of prejudice was not rebutted by the facts of this case and, for that reason, it reversed the trial court's order of judgment on the forfeiture. *Stonehart,* 748 P.2d at 1354–55.

In the *Maestas* case, Fred Moreno was the surety and posted bond on November 23, 1984. The defendant Maestas failed to appear on March 14, 1985 and the bond was ordered forfeited. On April 17, 1985, a citation was issued to Moreno pursuant to section 16–4–110, 8A C.R.S. (1986), directing him to show cause why judgment should not be entered on the order of forfeiture. After a hearing, which was not transcribed, the court entered judgment on the forfeiture. In its opinion, the court of appeals held that the trial court had not given forthwith notice as required by section 16–4–109(2) and that a rebuttable presumption of prejudice to the surety had arisen. Because Moreno as the surety-appellant had failed to designate a transcript of the show cause hearing for inclusion in the record on appeal, the court of appeals interpreted the trial court's finding that Moreno had not been prejudiced as equivalent to a finding that the presumption of prejudice had been rebutted. On that basis, the court of appeals affirmed the trial court's entry of judgment on the order of forfeiture. *Maestas,* 748 P.2d at 1352.

### II.

The first question before us is whether the notice of forfeiture was mailed forthwith to the surety. In *Stonehart,* the notice was sent to the surety 43 days after the order of forfeiture was entered. In *Maestas,* the notice was sent 34 days after the order of forfeiture was entered. In both cases, we agree with the court of appeals that the order was not mailed forthwith.

The term "forthwith" is defined as follows:

Immediately; without delay; directly; within a reasonable time under the cir-cumstances of the case; promptly and with reasonable dispatch.

*Black's Law Dictionary* 588 (5th ed. 1979). The legislature's use of the term requires that the trial court mail the notice promptly and without unnecessary delay. The statute does not set a rigid time frame as it would, for example, if it specified that the notice must be mailed on the date on which the order of forfeiture is entered or that notice must be mailed within a certain number of days after the order is entered. The trial court is in the best position to determine initially whether the notice was mailed forthwith but it must make that determination in light of our cases which reflect a strong policy favoring expedited handling of bond forfeiture matters. In *People v. Johnson,* 155 Colo. 392, 398, 395 P.2d 19, 22 (1964), we stressed that such proceedings should not be delayed:

After an order has been entered declaring a bond forfeited, such an order being in the nature of a declaration of default or an interlocutory decree, steps should be promptly taken to reduce a claim in debt arising out of breach of the condition of the bond to a judgment in behalf of the People and against the persons answerable for the amount of the "penal sum" specified in the bond.

Judgment cannot be entered on the order of forfeiture until notice and an opportunity to be heard have been given to the defendant and the surety. Thus prompt mailing of the notice is important to expedite the proceeding.

In *Stonehart* the trial court found that the notice was mailed forthwith because the delay in mailing was explained by the surety's failure to include her address, the clerk's difficulties in obtaining the address, the limited resources of the Telluride Clerk's Office, and the infrequency of bond forfeitures arising in that jurisdiction. Once the surety's address was ascertained, the clerk promptly mailed the notice. We are not unsympathetic to the practical difficulties presented by this case, but the record indicates periods of inaction which are not consistent with the trial court's responsibility to mail the notice forthwith.

Hence, we conclude that the statutory standard was not met.

■ In *Maestas*, a show cause hearing was promptly convened but, at the time of the hearing, the trial court learned that the surety had not been notified. Notice was then promptly given to the surety and a second show cause hearing was held. The effect was that the surety received notice 34 days after the order of forfeiture had been entered. We agree that this does not constitute forthwith notice under the statute. Accordingly, we find that in neither case was the notice mailed forthwith.

### III.

Under the statutory scheme regulating bail bond forfeitures, the notice requirements contained in sections 16–4–103(3), 16–4–109(2) and 16–4–110 serve several purposes. As the cases before us reflect, a single notice is sent by the trial court to accomplish the various statutory notice requirements. The notice informs all sureties that the defendant has failed to appear and allows the sureties to pursue the statutory grounds available for setting aside the forfeiture of the bond. The notice also advises all sureties of the date when a hearing pursuant to section 16–4–110 will be held so that the sureties may appear and show cause why judgment should not be entered on the order of forfeiture.

The trial court's failure to mail the notice forthwith as required by section 16–4–109(2) does not automatically require the remission of the surety's bond. Under the statute, a bond forfeiture may be set aside in three circumstances. *See People v. Caro*, 753 P.2d 196, 198–199 (Colo.1988). By the facts presented by these cases, the relevant statutory ground permits the bond forfeiture to be set aside only "if it appears that justice so requires." § 16–4–109(3), 8A C.R.S. (1986). The court of appeals correctly recognized the necessity for the surety to prove that he or she was prejudiced by the trial court's failure to mail the notice forthwith. *Maestas*, 748 P.2d at 1352; *Stonehart*, 748 P.2d at 1355. If the delay has not prejudiced the surety, we will not order the judgment vacated and the

order of forfeiture set aside. *See Martin v. People*, 738 P.2d 789 (Colo.1987) (state's failure to comply with forthwith notice requirement of the Uniform Mandatory Disposition of Detainers Act does not require dismissal of charges if defendant was not prejudiced); *People v. Higinbotham*, 712 P.2d 993 (Colo.1986) (same); *see also People in the interest of Clinton*, 762 P.2d 1381, 1389 (Colo.1988) (listing various factors including prejudice to be considered in determining whether the trial court's failure to appoint counsel forthwith in mental health certification proceedings requires reversal). *Cf. Herbertson v. People*, 160 Colo. 139, 415 P.2d 53 (1966) (bond forfeiture set aside because surety completely precluded from any due process rights when the entry of judgment against the surety occurred at same time that the forfeiture was ordered).

■ We next consider whether the court of appeals erred in holding that failure to give forthwith notice to the surety results in a presumption of prejudice to the surety. The court of appeals based its adoption of a rebuttable presumption on its view that the purpose of notifying a surety under section 16–4–109(2) is to inform the surety that the defendant has not appeared and thus to give the surety an opportunity to locate the defendant and bring the defendant to court. Under the court of appeals' analysis, any delay necessarily makes it more difficult for the surety to produce the defendant. *Stonehart*, 748 P.2d at 1354. The court of appeals buttressed its analysis by stating that "[f]orfeitures are not favored in the law, and statutes imposing a forfeiture upon a bailee's failure to appear must be strictly construed in favor of the surety." *Id.* (citing *People v. United Bonding Ins. Co.*, 5 Cal.3d 898, 489 P.2d 1385, 98 Cal.Rptr. 57 (1971)). The court of appeals also relied on *Herbertson*, 160 Colo. at 139, 415 P.2d at 53, in holding that strict compliance with the procedures set forth in the statute and rule governing bond forfeitures was required for the forfeiture to be valid.

In essence the court of appeals' creation of a rebuttable presumption is premised on

**1188**

the assumption that there is a very high probability that the surety will be prejudiced by the lack of forthwith notice and an interpretation that public policy disfavors forfeitures of bail bonds. In our view the court of appeals' creation of a presumption of prejudice in the context of prompt notification to sureties was error. A review of the law governing presumptions shows that the creation of a presumption of prejudice in this situation is inappropriate.

CRE 301 defines a presumption as follows:

In all civil actions and proceedings not otherwise provided for by statute or by these rules, a presumption imposes upon the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast.

The committee comment to CRE 301 reflects that our rule is essentially identical to Rule 301 of the Federal Rules of Evidence. The burden of persuasion under the rule remains throughout the proceeding upon the originally burdened party but application of the presumption shifts the burden of production of evidence to the opposing party. M. Graham, *Handbook of Federal Evidence* § 301.6, at 102 (2d ed. 1986). *See also* J. Wigmore, *Wigmore on Evidence* § 2491, at 305 (1981). If a presumption is applied in context of bail bond forfeitures, the burden of proving prejudice remains on the surety. But if the prosecution does not introduce sufficient evidence to rebut the presumption, the court can find that the surety was prejudiced without the surety having to introduce any evidence of prejudice.

In considering whether to adopt a presumption, courts generally weigh a variety of factors including policy, fairness and probability. M. Graham, *Handbook of Federal Evidence* § 301.6, at 101 (2d ed. 1986). According to *McCormick on Evidence*, most presumptions are created for a combination of reasons such as "to correct

an imbalance resulting from one party's superior access to the proof; social and economic policy considerations; avoidance of an impasse; and probability." E. Cleary, *McCormick on Evidence* § 343, at 968–69 (3d ed. 1984). The treatise explains the reasons why courts have created presumptions:

Most presumptions have come into existence primarily because the judges have believed that proof of fact B renders the inference of the existence of fact A so probable that it is sensible and timesaving to assume the truth of fact A until the adversary disproves it.

Obviously, most presumptions are based not on any one of these grounds alone, but have been created for a combination of reasons. Usually, for example, a presumption is based not only upon the judicial estimate of the probabilities but also upon the difficulties inherent in proving that the more probable event in fact occurred. Moreover, as is the case with initial allocations of the burdens, the reasons for creation of presumptions are often tied closely to the pertinent substantive law.

*Id.* at 969 (footnotes omitted); *see also* Morgan, *Techniques in the Use of Presumptions*, 24 Iowa L.Rev. 413, 416 (1939).

Applying these principles to the cases at hand to determine if creation of a presumption here is appropriate, we consider: 1) whether there is a high probability in most circumstances that lack of forthwith notice will prejudice the surety; 2) whether there is difficulty securing evidence of prejudice or whether the facts are uniquely more accessible to one party; and 3) whether public policy disfavors the forfeiture of bail bonds.

Assuming that probability of a certain fact is the first or primary consideration in adopting a presumption, it is not present in these cases. Here, we cannot say that there is a high probability amounting to a near certainty that delay in notifying the surety will result in prejudice to the surety. Whether prejudice will result depends on the facts of the case and includes such variables as the length of the delay, the

defendant's activities and whereabouts during the period of the delay, the surety's knowledge of the defendant's activities and whereabouts, and the surety's intent and capability of apprehending the defendant. If, for example, as was the case in *Caro,* 753 P.2d at 196, the surety is a relative of the defendant and is in contact with the defendant, it is not reasonable to infer that the surety is harmed by any delay in notification. If the defendant remains in the jurisdiction or if the surety has actual knowledge of the defendant's failure to appear, there would be no prejudice from a delay in notification to the surety. Thus, there is not the high degree of probability which would support an inference that the surety is always prejudiced by the trial court's failure to mail the notice forthwith.

We do not find that evidence of prejudice is primarily with the prosecution. This is not a case in which the facts necessary to prove prejudice are unavailable to the surety or the facts are uniquely possessed by the prosecution. Rather, the facts necessary to show prejudice would seem to be within the surety's knowledge. The surety, not the prosecution, is in the better position to know what the surety's relationship was with the defendant during the period of delay and what actions the surety would have taken but for the delay.

Lastly we do not find that public policy disfavors the forfeiture of bail bonds. In *Caro,* we reviewed the history of our bail bond laws. We stated that "the primary purpose of a bail bond is to assure that the defendant appears for trial" and we noted that "generally sureties should be held rigidly accountable in order to promote the administration of the criminal law." *Id.,* 753 P.2d at 201. Although forfeiture may be disfavored in other areas of the law, forfeiture of a bond based on the defendant's failure to appear is not disfavored. In fact, our past cases have admonished the prosecution for failing to act promptly on bond forfeitures. *See Johnson,* 155 Colo. at 398, 395 P.2d at 22. We emphasized in *Johnson* that the notice of forfeiture and show cause hearing protected the due process rights of the defendant and the surety, and we rejected the notion that the process should be delayed to provide the surety with an opportunity to find the defendant:

> The issues should be promptly made up and trial thereof had expeditiously and without unwarranted delay. To grant delay in order that sureties have time to search for, produce, and surrender the defendant would be without warrant.

*Id.* at 399, 395 P.2d at 22.

Although one jurisdiction has automatically set aside forfeitures where notice of appearance was not sent within a given time period specified by statute, *see United Bonding Ins. Co.,* 489 P.2d at 1390, 98 Cal.Rptr. at 62 (pursuant to California statute, surety is to be released from all obligations under the bond if notice of forfeiture is not delivered for a period of thirty days), we have found no jurisdiction where failure of prompt or forthwith notice of forfeiture creates a rebuttable presumption of prejudice to the surety.

Some jurisdictions have noted that prompt notice of the defendant's failure to appear is important to enhance the surety's chances of locating and compelling the appearance of the bailee. *Id.; State v. Bullock,* 412 So.2d 1059 (La.1982). *But see State v. Sunday,* 729 P.2d 1319 (Mont. 1986) (surety benefited rather than prejudiced by extra three months within which to locate defendant and discharge the forfeiture before judgement entered). Other jurisdictions have discounted the importance of notice of the defendant's failure to appear by emphasizing that it is the surety's duty to be knowledgeable of the proceedings and the possibility of forfeiture resulting from the nonappearance of the bailee. *See, e.g., United States v. Felix–Meza,* 825 F.2d 1334, 1336 (9th Cir.1987); *United States v. Marquez,* 564 F.2d 379 (10th Cir.1977); *Capitol Indemnity Ins. Co. v. State,* 86 So.2d 156 (Fla.1956); *State v. Due,* 427 N.W.2d 276 (Minn.App.1988); *People v. Castro,* 119 Misc.2d 787, 464 N.Y. S.2d 650 (1983); *State v. Sunday,* 729 P.2d at 1319; *Short v. State,* 482 P.2d 592 (Okla. 1971).

For these reasons we disagree that the law should be strictly construed in favor of the surety by creating a presumption of prejudice. We do agree, however, that the trial court must comply with the statutory procedures regarding forfeiture and entry of judgment on a forfeiture. As *Johnson* underscores, it is important that the process be carried out without unnecessary delay.

██ In neither of the cases before us was the statutory deviation serious enough for us to conclude that justice requires that the bond forfeiture be set aside. The purposes of the notice are to inform all sureties that the defendant failed to appear and an order of forfeiture has been entered, and to advise the sureties of the show cause hearing. Here each surety received notice and appeared at the show cause proceeding. No prejudice from the delay in notification was shown in either case. Hence, we conclude that the failure to give forthwith notice was not serious and does not require that the judgment of forfeiture be vacated.

Accordingly, we affirm the court of appeals' judgment in *Maestas*. We reverse its judgment in *Stonehart* and we remand the case with directions to return it to the trial court for reinstatement of its judgment.