Howard **ROSENTHAL** and Rudy L. and Judy J. Bettmann, on behalf of themselves and all others similarly situated, Plaintiffs–Appellants,

v.

**DEAN WITTER REYNOLDS, INC.**, Castle Pines Land Company, Frank B. Walker, Jack A. Vickers, III, Helen McMaster Coulson, William B. Graham, Larry Reichert, and Kutak Rock & Campbell, Defendants–Appellees.

No. 92CA1789.

Colorado Court of Appeals, Div. V.

April 21, 1994.

As Modified on Denial of Rehearing June 2, 1994.

Petition and Cross–Petition for Certiorari Granted Nov. 15, 1994.

Vinton Waller Slivka & Panasci, Richard P. Slivka, Patrick D. Vellone, Denver, Spector & Roseman, P.C., Eugene A. Spector, Robert M. Roseman, Robert G. Eisler, Philadelphia, PA, for plaintiffs-appellants.

Brega & Winters P.C., Charles F. Brega, Thomas D. Birge, Cathryn B. Mayers, Denver, for defendant-appellee Dean Witter Reynolds, Inc.

Weller, Friedrich, Ward & Andrew, Geoffrey S. Race, Andrew J. Friedrich, Suanne M. Dell, Denver, for defendants-appellees Frank B. Walker, Jack A. Vickers, III, and William B. Graham.

Kutak Rock, Timothy P. Daly, Denver, Patrick B. Griffin, Omaha, NE, for defendant-appellee Kutak Rock & Campbell.

No appearance for defendants-appellees Castle Pines Land Co., Helen McMaster Coulson, and Larry Reichert.

Opinion by Judge CASEBOLT.

In this action premised on an alleged violation of the Colorado Securities Act, § 11–51–101, et seq., C.R.S. (1987 Repl.Vol. 4B), plaintiffs Howard Rosenthal and Rudy L. and Judy J. Bettmann appeal the judgment of dismissal entered in favor of defendants, Dean Witter Reynolds, Inc.; Castle Pines Land Company; Frank B. Walker; Jack A. Vickers, III; Helen McMaster Coulson; William B. Graham; Larry Reichert; and Kutak Rock & Campbell. Plaintiffs also appeal from the trial court's order denying their motion for class certification. We affirm in part, reverse in part, and remand for further proceedings.

This case arises from the plaintiffs' purchase of bonds issued by Castle Pines North Metropolitan District (District). That entity, a quasi-municipal corporation and a political subdivision of Colorado, encompasses approximately 1,600 acres of land located in Douglas County, Colorado. It was created to provide for the construction and installation of water, sanitary sewer, and street improvements for residents living within the District.

Frank B. Walker, Jack A. Vickers, III, Helen McMaster Coulson, William B. Graham, and Larry Reichert were the elected board of directors for the District. Kutak Rock & Campbell was bond counsel for the issuance of the bonds. Dean Witter, a national brokerage firm, was the underwriter for the bond offering. It sold the bonds through its Colorado offices and through numerous regional offices nationwide.

On July 17, 1986, the District issued Series 1986 A and B bonds in the face amount of $38,170,000 in order to repay, in advance of maturity, the District's Series 1984 Bonds. Proceeds from the bonds were also intended to pay for the costs of acquiring, constructing, and completing water, sanitary sewer, street, transportation, and recreation improvements within the District. The District's ability to make payment on the 1986 bonds was dependent upon the completion, sale, and occupation of approximately 3,700 residential units on the property.

In connection with the bond offering, an Official Statement was prepared. That

Statement contained, among other things, approximately six pages of risk factors associated with issuance of the bonds, information concerning the sources and uses of funds, and the prospects for development within the District.

Plaintiff Rosenthal, a Pennsylvania resident, purchased five of the District's Series 1986 A bonds through Dean Witter's regional office in Pennsylvania. Plaintiffs Bettmann purchased two of the District's Series 1986 B bonds in Colorado.

In November 1990, the District filed a petition for bankruptcy. Subsequently, on July 16, 1991, Rosenthal filed a class action complaint on behalf of a class alleged to consist of all persons and entities, other than the defendants, who purchased the 1986 bonds between the date of the offering and the date of bankruptcy filing by the District. The action was filed within the three-year statute of limitations and within the five-year statute of repose contained in § 11–51–125(8), C.R.S. (1987 Repl.Vol. 4B) of the Colorado Securities Act.

In his complaint, as pertinent to this appeal, Rosenthal alleged that defendants made misstatements of fact and omitted material facts in the Official Statement, that defendants conspired to deceive the investing public, to introduce bonds into the marketplace which were not entitled to be marketed, to cause class members to purchase or acquire the bonds at inflated prices, and to permit the developer to obtain large profits from the sale of land to other developers and homes to individual purchasers.

Rosenthal asserted that, even though he did not read the Official Statement before purchasing the bonds, he was not required to plead or prove direct reliance on the alleged misstatements contained within it. Rather, Rosenthal insisted that he was entitled to a presumption of reliance, based either upon application of a doctrine known as "fraud created the market," or based upon the application of *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972).

On November 8, 1991, Rosenthal filed a motion to amend the complaint, seeking to add the Bettmanns as named plaintiffs. The court granted that motion. In the meantime, several of the defendants had filed motions to dismiss, each alleging various grounds, including failure to state a claim upon which relief could be granted, lack of subject matter jurisdiction, and failure to allege reliance on the· asserted misrepresentations.

In response to the motions to dismiss, the trial court dismissed portions of plaintiffs' complaint. In particular, the court ruled that the "fraud created the market" doctrine was not available here to bond purchasers in order to create a presumption of reliance. Further, the court ruled that the presumption of reliance enunciated in *Affiliated Ute* was inapplicable.

Thereafter, the trial court denied plaintiffs' C.R.C.P. 23 motion for class certification. The court specifically found that the events surrounding the offer and sale to Rosenthal occurred in Pennsylvania, not in Colorado, thus holding that Rosenthal could not present a claim under Colorado law, and that this was a unique defense applicable to him. Consequently, Rosenthal was not typical of the class, and therefore, he could not maintain a class action under C.R.C.P. 23.

Further, the court ruled that unique defenses also applied to the Bettmanns and, therefore, concluded that they also were not typical of the class. Specifically, the court found that since the Bettmanns had joined the action as named plaintiffs more than five years after their purchase of the securities, they were barred from maintaining the class action by the five-year statute of repose, § 11–51–125(8), C.R.S. (1987 Repl.Vol. 4B).

This appeal followed the trial court's C.R.C.P. 54(b) dismissal and class action orders. One other claim remains pending in the trial court and is not directly involved in this appeal.

## I.

Plaintiffs contend that their failure to plead direct reliance was not fatal because they were entitled to a presumption of reliance by virtue of the "fraud created the market" doctrine. Further, relying upon *Affiliated Ute Citizens v. United States, supra*,

plaintiffs argue that they were entitled to a presumption of reliance based on material misrepresentations and omissions contained in the Official Statement. We disagree.

■ To prove a claim of fraud under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1988), Securities & Exchange Commission Rule 10b–5, 17 C.F.R. 240.10b–5; and § 11–51–123, C.R.S. (1987 Repl.Vol. 4B), a plaintiff must demonstrate reliance on a defendant's representation in order to show a causal connection between the defendant's fraud and the plaintiff's injury. *Basic, Inc. v. Levinson,* 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988); *Boettcher & Co. v. Munson,* 854 P.2d 199 (Colo.1993). Since 1972, however, some federal courts have, under certain circumstances, tempered the perceived harshness of the reliance requirement by creating rebuttable presumptions of reliance, instead of requiring proof of actual reliance. *See Affiliated Ute, supra; Blackie v. Barrack,* 524 F.2d 891 (9th Cir.1975).

These presumptions of reliance have arisen under a "fraud on the market" doctrine, a "fraud created the market" doctrine, or situations involving primarily material omissions as opposed to misstatements. *See Affiliated Ute, supra; Freeman v. Laventhol & Horwath,* 915 F.2d 193 (6th Cir.1990).

■ To be entitled to a presumption of reliance under the "fraud on the market" doctrine, a plaintiff must plead and prove that there is an open, developed, and efficient market in which the price of a security is determined by the use of all available public information about the issuer. *Basic, Inc. v. Levinson, supra.* It must be shown that the security was traded in large volume during the period at issue, that a significant number of securities analysts followed and reported on the security, and that the price changed in relation to public statements or reports about the activities of the issuer. *Alter v. DBLKM, Inc.,* 840 F.Supp. 799 (D.Colo. 1993).

The "fraud created the market" doctrine has been classified either as a subspecies of fraud on the market, *see Mott v. R.G. Dickinson & Co.* (D.Kan.1993) (1993 WL 342839),

or as a separate theory in its own right. *See* H. Bloomenthal, *Securities Law Handbook* § 17.04 (1993); T. Hazen, *The Law of Securities Regulation* § 13.5 (2d ed. Supp.1993). This doctrine has been used to create a presumption of reliance in cases involving initial offerings of securities in which there is no open, developed, and sufficiently efficient secondary market involved, *see Shores v. Sklar,* 647 F.2d 462 (5th Cir.1981), *cert. denied,* 459 U.S. 1102, 103 S.Ct. 722, 74 L.Ed.2d 949 (1983), and in which there is fraud so egregious that no investor would have purchased the security if the truth were known, or the enterprise itself is patently worthless. *Abell v. Potomac Insurance Co.,* 858 F.2d 1104 (5th Cir.1988).

The elements to be pleaded and proven under "fraud created the market" are generally that the securities at issue are not entitled to be marketed, the plaintiff relied on the availability of the security on the market as an indication of genuineness, and the plaintiff suffered losses. *Shores v. Sklar, supra.*

■ For the *Affiliated Ute* doctrine to apply, and thus generate a presumption of reliance, alleged omissions must predominate over issues involving affirmative misrepresentations, and the omissions must not be the type that can be said to exist only because of other positive statements. *Alter v. DBLKM, Inc., supra; Grossman v. Waste Management Inc.,* 589 F.Supp. 395 (N.D.Ill.1984).

Plaintiffs here concede that the District's securities were not traded in an open, developed, and efficient market. Hence, they rely only upon the "fraud created the market" doctrine and the *Affiliated Ute* doctrine, each of which we will examine in turn.

### A.

■ Plaintiffs urge us to adopt the "fraud created the market" doctrine. We conclude that the formulation of the doctrine enunciated by the United States Court of Appeals for the Tenth Circuit should be imported into Colorado law.

No Colorado appellate court has previously considered the availability of a reliance presumption under the proffered doctrine.

However, our supreme court has recognized that federal authorities are highly persuasive when, as here, the Colorado Securities Act parallels federal enactments. *Lowery v. Ford Hill Investment Co.,* 192 Colo. 125, 556 P.2d 1201 (1976).

The "fraud created the market" doctrine has not been universally accepted in the federal courts. The Fifth, Tenth, and Eleventh Circuits have adopted some form of the theory. *See Ross v. Bank South, N.A.,* 885 F.2d 723 (11th Cir.1989); *T.J. Raney & Sons, Inc. v. Fort Cobb, Oklahoma Irrigation Fuel Authority,* 717 F.2d 1330 (10th Cir.1983); *Shores v. Sklar, supra.* The Sixth and Seventh Circuits have repudiated it. *See Eckstein v. Balcor Film Investors,* 8 F.3d 1121 (7th Cir.1993); *Freeman v. Laventhol & Horwath, supra.*

Those courts which have adopted it do so on the rationale that if an issuer is willing to issue securities, and underwriters are willing to present the issue to the market, an investor who seeks to make investments in securities that are entitled to be marketed need not demonstrate direct reliance on written disclosures. *Shores v. Sklar, supra.* Instead, reliance on the integrity of the regulatory process is presumed. *T.J. Raney, supra.*

Those courts which have rejected the theory do so because they view it as having a false premise:

> Federal Securities law does not involve merit regulation.... Full disclosure of adverse information may lower the price, but it does not exclude the security from the market. Securities of bankrupt corporations trade freely; some markets specialize in penny stocks. This linchpin of *Shores*—that disclosing bad information keeps securities off the market, entitling investors to rely on the presence of the securities just as they would rely on statements in a prospectus—is simply false.

*Eckstein v. Balcor Film Investors, supra,* 8 F.3d at 1131.

However, the Tenth Circuit formulation adopted in *T.J. Raney, supra,* does not suffer from the infirmities noted in *Eckstein v. Balcor Film Investors, supra,* and other cases and authorities critical of the doctrine.

To establish reliance based on the doctrine of "fraud created the market," the Tenth Circuit requires a plaintiff to plead and prove the elements listed in *Shores v. Sklar, supra;* that is: (1) the defendants knowingly conspired to bring securities onto the market which were not entitled to be marketed, intending to defraud purchasers; (2) the plaintiff reasonably relied on the bonds' availability on the market as an indication of their apparent genuineness; and (3) as a result of the scheme to defraud, the plaintiffs suffered a loss. In addition, the Tenth Circuit requires a plaintiff to plead and prove a fourth requirement, *i.e.,* that the securities were "unlawfully issued." *T.J. Raney, supra.*

The Tenth Circuit formulation ensures that a purchaser may assume the securities are lawfully and legally issued, *i.e.,* the bonds are issued by a legally existing entity, whose business is not a worthless hoax.

Further, this formulation answers the criticism leveled by courts in opinions such as *Eckstein v. Balcor Film Investors, supra,* because it requires more than just "bad information" to keep securities off the market. Rather, it requires that the securities be illegally or unlawfully issued.

This formulation comports with the acknowledged purpose of avoiding "merit regulation" in federal securities law. It further avoids the establishment of a scheme of investor insurance, *see List v. Fashion Park Inc.,* 340 F.2d 457 (2d Cir.1965), because it does not reward plaintiffs who fail to read the very disclosures that both federal and state law prescribe. Moreover, the formulation would avoid the sometimes quixotic forays into economic theories that courts are ill-suited to perform. *See Basic, Inc. v. Levinson, supra* (White, J., dissenting).

We note also that adoption of the Tenth Circuit formulation is consistent with our state law which sets forth the circumstances under which it is appropriate to create presumptions, as articulated in *Moreno v. People,* 775 P.2d 1184 (Colo.1989).

Finally, this four-part formulation would give those investors who are entitled to the protection of Colorado securities laws the same protection available to those in the

federal Tenth Circuit, a rationale which implements the Colorado policy of adopting interpretations of federal law when Colorado statutes parallel federal enactments.

Plaintiffs contend that *Bank of Denver v. Southeastern Capital Group, Inc.*, 763 F.Supp. 1552 (D.Colo.1991) does not incorporate the fourth element of the Tenth Circuit test, and thus, they assert we should reject the "unlawful issuance" portion of the test. We disagree.

We read that case as analyzing a claim that the pleadings there did not meet the *specificity* requirements of Fed.R.Civ.P. 9(b), not as passing on the *validity* of a three-part test. Moreover, if read to require only a three-part test, *Bank of Denver v. Southeastern Capital Group, Inc., supra,* is inconsistent with *T.J. Raney, supra,* and thus we decline to follow it. *Alter v. DBLKM, Inc., supra,* expressly follows *T.J. Raney,* and we believe it correctly presents the four-part Tenth Circuit formulation.

■ Applying these principles to the claims asserted here, we observe that the complaint fully pleads the first three elements of the test adopted. However, since we find no indication that plaintiffs assert these bonds were illegally or unlawfully issued, it fails to plead the fourth. Given that the complaint fails to plead illegal issuance of these securities, we hold that these claims fail to state a claim upon which relief may be granted and, consequently, must be dismissed. *See Mott v. R.G. Dickinson & Co., supra.* Hence, we find no error in the trial court's dismissal of these portions of the complaint.

### B.

We also reject plaintiffs' argument that they are afforded a presumption of reliance based on *Affiliated Ute, supra.*

In *Affiliated Ute, supra,* a group of Native Americans organized a corporation to distribute assets to its members. Each member received title to ten shares of stock that were deposited with a local bank. The bank entered into a fiduciary relationship with the stockholders and assumed primary responsibility for providing services related to the stock.

Thereafter, investors in surrounding communities developed an interest in the stock, and eventually their demand for the stock surpassed that of the Utes. The bank quietly began building a non-Ute clientele for the stock, without informing the Utes of this secondary market. The bank then devised a plan or scheme to induce the Utes to dispose of their shares without disclosing to them material facts that could have influenced their decision to sell. The bank then resold those shares to the non-Utes for an elevated price.

The Utes subsequently learned of the bank's scheme and brought suit. They alleged, pursuant to Rule 10b–5, that the bank had breached a fiduciary duty to them when it failed to disclose information about the secondary market. The bank responded that the Utes had failed to prove reliance.

The Supreme Court determined the following:

> The individual defendants ... were market makers, not only for their personal purchases constituting 8⅓% of the sales, but for the other sales their activities produced. This being so, they possessed the affirmative duty ... to disclose this fact to the [Ute] sellers.... It is no answer to urge that ... these defendants may have made no positive representation or recommendation. The defendants may not stand mute while they facilitate the [Utes'] sales to those seeking to profit in the non-Indian market the defendants had developed and encouraged and with which they were fully familiar. The sellers had the right to know that the defendants were in a position to gain financially from their sales and that their shares were selling for a higher price in that market.

*Affiliated Ute, supra,* 406 U.S. at 154, 92 S.Ct. at 1472, 31 L.Ed.2d at 761.

Thus, the court concluded that "in a case involving primarily a failure to disclose," positive proof of reliance was not a prerequisite to recovery. Rather, "[a]ll that is necessary is that the facts withheld be material in the sense that a reasonable investor might have

considered them important in the making of this decision." *Affiliated Ute, supra,* 406 U.S. at 154, 92 S.Ct. at 1472, 31 L.Ed.2d at 761.

Subsequent cases have clearly stated that the *Affiliated Ute* presumption of reliance applies only to those Rule 10b–5 actions based primarily upon omissions rather than on misrepresentations. *See Finkel v. Docutel/Olivetti Corp.,* 817 F.2d 356 (5th Cir.1987); *Cavalier Carpets, Inc. v. Caylor,* 746 F.2d 749 (11th Cir.1984); *Huddleston v. Herman & MacLean,* 640 F.2d 534 (5th Cir.1981); *Wilson v. Comtech Telecommunications Corp.,* 648 F.2d 88 (2d Cir.1981).

■ We conclude that the *Affiliated Ute* rebuttable presumption of reliance is inapplicable here, because Plaintiffs' complaint pleads primarily misstatements. For instance, plaintiffs alleged that in the Official Statement, defendants improperly characterized "the Castle Pines development as a growing development in the midst of Colorado's real estate and economic boom of the 1980's." Plaintiffs maintained that this was an inaccurate portrayal, which misled them to believe that the homes would be constructed and sold, which would in turn create sufficient funds to make payments on the 1986 bonds.

Further, plaintiffs' complaint alleged that in the Official Statement, "the District's projection of the number of units for build out would be impossible to achieve and that the shortfall would significantly diminish the ability of the District to make payment on the 1986 bonds."

Also, plaintiffs asserted that, in the Official Statement, defendants' "estimated value of the land after build out in relation to debt was overly optimistic and was made without any reasonable basis." According to plaintiffs, this information was "materially misleading because it created the impression that it was unlikely that property owners would become delinquent in making payment on their taxes." And, they claimed that defendants knew that the pledged Plant Investment Fee income projections contained in the Official Statement were overly optimistic, and that such income would, therefore, be "insufficient ... to make payments on the 1986 bonds."

These allegations describe predominantly misstatements of fact, not omissions. And, in those limited circumstances when plaintiffs do allege omissions, they argue that such omissions caused other disclosures to be misleading. *See Finkel v. Docutel/Olivetti Corp., supra; Grossman v. Waste Management, Inc., supra.*

Under these circumstances, therefore, plaintiffs were not entitled to the rebuttable presumption of reliance enunciated in *Affiliated Ute, supra.* Hence, the trial court correctly concluded that this doctrine did not apply.

## II.

Plaintiffs also argue that the trial court erred in determining that unique defenses applied to Rosenthal and in finding he was thus atypical as a class representative. We agree that the trial court erroneously interpreted the law, and therefore, insofar as such ruling may affect the remaining claims pending in the trial court, this issue must be reconsidered by the trial court.

## A.

■ Initially, plaintiffs contend that the trial court improperly ruled that the Colorado Securities Act does not apply to Rosenthal because he purchased his securities in Pennsylvania and therefore could not bring a claim under Colorado law. They argue that, since the bonds were offered for sale in Colorado, the Colorado securities laws clearly apply to Rosenthal. We agree.

C.R.C.P. 23(a) delineates the prerequisites to maintaining a class action. That rule states in pertinent part:

One or more members of a class may sue or be sued as representative parties on behalf of all only if: (1) The class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative

parties will fairly and adequately protect the interests of the class.

■■■■ The trial court is given broad discretion under C.R.C.P. 23 in certifying a class action. Moreover, the trial court's determination will be set aside only when an abuse of discretion is shown, *Friends of Chamber Music v. City and County of Denver*, 696 P.2d 309 (Colo.1985), or when an erroneous application of the law occurs. *Kuhn v. Department of Revenue*, 817 P.2d 101 (Colo.1991).

Here, contrary to the trial court's ruling, we conclude that there is a transactional nexus between Rosenthal and Colorado. The Colorado Securities Act prohibits fraudulent conduct "in connection with the offer, sale, or purchase of any security, directly or indirectly...." Section 11–51–123(1), C.R.S. (1987 Repl.Vol. 4B). It further prohibits a person from "offer[ing] or sell[ing] a security by means of any untrue statement of a material fact or any omission to state a material fact ..." Section 11–51–125(3) C.R.S. (1987 Repl. Vol. 4B). The statute provides that these sections apply "to persons who sell or offer to sell when an offer to sell is made in this state *or* when an offer to buy is made and accepted in this state." Section 11–51–127(1) C.R.S. (1987 Repl.Vol. 4B) (emphasis added).

The definitional section of the Act defines "sale" or "sell" as including "every contract of sale of, contract to sell, or disposition of a security ... for value." Section 11–51–102(10)(a) C.R.S. (1987 Repl.Vol. 4B). An "offer to sell" includes "every attempt or offer to dispose of, or solicitation of an offer to buy, a security ... for value." Section 11–51–102(10)(b), C.R.S. (1987 Repl.Vol. 4B).

Applying these provisions to the facts here, we conclude that the Act applies to the conduct alleged. Castle Pines North Metropolitan District, the issuing entity, was creating an offer to sell by the issuance of the Official Statement. Dean Witter was likewise attempting to offer or dispose of these securities, both within Colorado and through its various national offices. Plaintiffs allege that Dean Witter, the defendant law firms, and the individual defendants who were members of the Board of the District directly assisted in the commission and concealment of the wrongs involved.

Defendants rely on *Simms Investment Co. v. E.F. Hutton & Co.*, 699 F.Supp. 543 (M.D.N.C.1988) as authority for the proposition that the entire transaction must occur in Colorado. We disagree that *Simms* establishes such a principle.

In *Simms*, the plaintiff brought an action in federal court in North Carolina against a sales agent in the formation of a joint venture and against a party to the joint venture. The plaintiff alleged that the defendants made misrepresentations and omissions in order to induce it to participate in the joint venture, in violation of the Colorado Securities law, the Securities Exchange Act of 1934, and North Carolina's common law prohibition against fraud. Defendants asserted that dismissal of plaintiff's claims under Colorado law was proper because the transaction in question did not amount to the "offer and sale of a security" under the Colorado Securities Act. Rather, defendants alleged that any offers to buy or sell occurred in North Carolina.

Subsequently, the court decided that both Colorado law and North Carolina law applied to the transaction. The court ruled that both states' interests could be satisfied without presenting a conflict of laws question. It then determined that the transaction "ha[d] a sufficient territorial nexus with Colorado so as to permit the application of its securities law." *Simms Investment Co. v. E.F. Hutton & Co., supra*, 699 F.Supp. at 546. As support for its conclusion, the court noted that both parties agreed that the joint venture was a security, and that plaintiff alleged "that the offer, acceptance, or both ... occurred in Colorado." The court then concluded that whether plaintiff would be able to substantiate its allegations was a matter for future determination.

*Simms* does not preclude Rosenthal from bringing a claim under Colorado law. First, the *Simms* court simply concluded that the securities laws of two or more states may be applicable to a single transaction without presenting a conflict of laws question. It then determined that the plaintiff alleged that a "sufficient territorial nexus" existed in

Colorado to support its opposition to a motion to dismiss.

Moreover, we read the statement in *Simms* that "the transaction must take place in Colorado" to refer *either* to the offer *or* the sale. We do not read the provisions of the Act to require that the particular transaction at issue must *wholly* occur in this state, especially in view of the disjunctive language utilized in § 11–51–127(1), C.R.S. (1987 Repl.Vol. 4B).

■ Blue Sky laws "protect legitimate resident issuers by exposing illegitimate resident issuers to liability, without regard to the markets of the issuer." *Simms Investment Co. v. E.F. Hutton & Co.*, 699 F.Supp. at 545. Hence, the fact that Rosenthal admittedly purchased his bonds in Pennsylvania is not determinative. Here, all other events relevant to the claims asserted occurred in Colorado, including the offer to sell.

Under these circumstances, therefore, we hold that the trial court erred in determining that the Colorado Securities Act did not apply to Rosenthal's purchase. Because the court relied in part upon Rosenthal's "atypical" status in denying class certification, the trial court must now reexamine, in light of our holding, all elements enunciated in C.R.C.P. 23 to determine whether, in its discretion, class certification should be granted.

### B.

■ Plaintiffs additionally contend that the trial court erred in concluding that the Bettmanns were subject to unique defenses and hence were also atypical class members. Plaintiffs specifically allege that the trial court erred in ruling that the Bettmanns' claims as class representatives against defendants were barred by the statute of repose. Again, we agree.

■ Because C.R.C.P. 23 is virtually identical to Fed.R.Civ.P. 23, we rely on cases applying the federal rule. *Goebel v. Dept. of Institutions*, 764 P.2d 785 (Colo.1988).

■ The commencement of a class action tolls the statute of limitations for all members of the putative class, thereby preserving for the individual class members the portion of the limitations period that remained at the time the class action was commenced. *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). The statute of limitations remains tolled for all members of the putative class until class certification is denied. *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983). At that point, class members may choose to file their own suits or intervene as plaintiffs in the pending action.

There is no doubt that, at the time of denial, Bettmanns would retain the right to maintain suit for their individual claims. *Crown, Cork & Seal Co. v. Parker, supra.* Here, if we assume class certification is denied because of Rosenthal's status, then the question becomes whether Bettmans' claimed right to sue *as class representatives* is barred by the statute of repose, because they joined as *named plaintiffs* more than five years from the date they bought their securities. *See* § 11–51–125(8), C.R.S. (1987 Repl. Vol. 4B).

We have been directed to no authority directly on point, and our own research discloses none. While the federal cases indicate that the *tolling* doctrines of *American Pipe, supra,* and *Crown, Cork, supra,* have not been extended to include class members who file new, subsequent class actions, see *Korweck v. Hunt*, 827 F.2d 874 (2d Cir.1987); *Robbin v. Fluor Corp.*, 835 F.2d 213 (9th Circ.1987), we find no authority that analyzes whether a putative class member who joins as a named plaintiff and later seeks to be a class representative in the pending class action is restricted by a statute of *repose* from suing as a class representative.

■ We conclude that, as long as the party seeking to act as a class representative does not commence a new, separate suit as class representative, but merely seeks to maintain the currently pending and timely filed action as a class action and act as class representative, the statute of repose does not apply. To interpret the statute differently would preclude individual actions brought after class certification is denied, if the security

was purchased more than five years prior to institution of the claim. Such a result would be inconsistent with the policies underlying *American Pipe* and *Crown, Cork.*

Accordingly, we determine that the trial court erred in concluding that the Bettmanns were barred from suing as class representatives by the statute of repose.

Because the court relied in part upon the Bettmann's atypical status in denying class certification, the trial court must re-examine, in light of our holding, all elements enunciated in C.R.C.P. 23 to determine whether, in its discretion, class certification should be granted.

The judgment is affirmed except as to the class certification and class representation issues. As to those issues, the judgment is reversed, and the cause is remanded for further proceedings consistent with the views expressed in this opinion.

HUME and RULAND, JJ., concur.